CASE 71—PETITION ORDINARY—MAY 11.

# McKinney, &c v. Western Assurance Company of Toronto.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

1. FIRE INSURANCE—CHANGE OF TITLE—RIGHTS OF MORTGAGEE.— Where a policy of fire insurance provided that it should be void if any change should take place "in the interest, title or possession" of the property, "whether by legal process or judgment or by voluntary act of the insured or otherwise," a sale of the property under a judgment enforcing a mortgage lien and a conveyance to the mortgagee, who became the purchaser, constituted such a change in the title as rendered the policy void, although the mortgage was made with the consent of the company, and an indorsement was made by the company upon the policy that the

McKinney, &c v. Western Assurance Company of Toronto.

loss, if any, was payable to the mortgagee, "as his interest may appear." The indorsement upon the policy gives the mortgagee no right to recover, as his interest as mortgagee has been merged in his perfect legal title, and he can have no greater right than the insured, as to whom the change of title renders the policy void.

2. SAME.—The fact that the mortgagee purchased under an agreement to allow the wife of the insured to redeem did not continue the policy in force for her benefit, she being a stranger to the contract of insurance.

A. A. HAZELRIGG AND C. C. TURNER FOR APPELLANT.

1. The assignment of an insurance policy creates and constitutes a new contract of insurance between the company and the assignee whereby the assignee becomes the beneficiary in the policy. (Insurance Company v. Allen, 14 Ky. Law Rep., 161.)

2. The consent of an insurance company to the assignment of a policy to one holding a mortgage on the insured property carries with it the implied consent that the mortgagee may, upon maturity of his debt, foreclose his mortgage lien, and, if necessary to protect himself, become the purchaser of the property without invalidating the policy .

J. J. CORNELISON ON SAME SIDE.

1. The petition of appellant stated facts sufficient to constitute a cause of action by setting forth:

    (a) The execution and delivery by the company of the policy of $1,000.

    (b) The payment of the premium by the assured.

    (c) The endorsement upon the policy by the company permitting the mortgage to be made, and its agreement in writing to pay the loss, if any, to the mortgagee.

    (d) The total destruction of the house by fire during the life of the policy without the fault of appellants or any one.

    (e) The waiver of the notice of loss by a denial of its liability by the company.

    (f) That the interest of the appellant in the property was as great when it was destroyed by fire as before.

    (g) That the building was of greater value than the face of the policy.

2. The words, as endorsed on the face of the policy, "loss, if any, payable to J. F. McKinney, as his interest may appear" entitle appellant to the insurance money, whether he be mortgagee or owner of the legal title.

3. The endorsement was a waiver of the provision in the policy that the policy should be void in the event foreclosure proceedings were commenced, or the title should be changed by a judgment, sale and conveyance.

TYLER & APPERSON FOR APPELLEE.

1. The petition of the appellant was fatally defective in failing to state that he had the same interest in the property when it was destroyed by fire as when the endorsement was made on the policy, the allegation that his interest was "as great or greater" being insufficient to constitute a cause of action.

2. Under the provision of the policy that the whole policy should be void in case foreclosure proceedings were commenced, the institution of such proceedings and a sale thereunder and purchase by appellant renders the policy void, and the fact that the mortgagee was the purchaser can make no difference since he must stand in the same attitude as a stranger who may have been the purchaser. (Manhattan Ins. Co. v. Stein & Zang, 5 Bush, 569.)

3. The endorsement on the face of the policy, "loss, if any, payable to J. F. McKinney, as his interest may appear," had the effect only to substitute McKinney for the one originally assured, and he was bound by all the conditions and stipulations of the policy. (Bergman &c., v. Commercial Assurance Co., of London, 13 Ky. Law Rep., 772; May on Insurance, sec. 378.)

4. The title of the party originally assured having passed from him previous to the loss by reason of the sale under the foreclosure proceedings, he had no longer any insurable interest in the property, and, the appellant having forfeited his right, neither is entitled to recover.

JUDGE GRACE DELIVERED THE OPINION OF THE COURT.

On the 29th day of March, 1890, Jno. S. Parrish effected an insurance on his dwelling house, situated on a tract of land of one hundred acres, in Montgomery county, in the Western Assurance Co., Toronto, Canada, for one thousand dollars, for the period of three years from said date, and paid twelve dollars and fifty cents, the agreed premium on same, taking a policy in the usual form. This policy, however, contained many stipulations and conditions, limiting the liability of the defendant company, and among others, this one, that is now relied upon by defendant:

"This entire policy, unless otherwise provided by agreement endorsed hereon, or added hereto, shall be void. . . if, with the knowledge of the insured, foreclosure proceedings be commenced, or notice given of sale of any property covered by this policy, by virtue of any mortgage or trust deed, or if any change (other than by death of the insured) take place in the interest, title or possession of the subject of insurance, (except change of occupants without increase of risk), whether by legal process or judgment, or by voluntary act of the insured or otherwise."

On the 9th of January, 1891, Parrish borrowed of his co-plaintiff, McKinney, the sum of three thousand dollars, and at the same time made to him a mortgage in due form of law, on this one hundred acre tract of land. This mortgage was made by and with the knowledge and consent of the insurance company, which at that time endorsed on the policy as follows:

"Loss, if any, payable to J. F. McKinney, as his interest may appear.                    A. HOFFMAN, Agent.

"January 19, 1891."

This mortgage debt not being paid, McKinney, in March, 1892, instituted suit to foreclose same on the land, and at the May term of the Montgomery Circuit Court, judgment was rendered, the land sold on the 16th day of May, 1892, and bought by McKinney for the amount of his debt, interest and cost. This sale was duly reported to the Montgomery Circuit Court, at its September term, 1892, and the sale confirmed, and on the fifth day of October, 1892, a deed was made by the commissioners of court, duly approved, to said J. F. McKinney, the purchaser. On the seventh day of October, 1892, the house was destroyed by fire, without any fault on the part of McKinney.

Application was duly made for the payment of the amount

of the policy, $1,000, which being refused, and the rights of McKinney or Parrish to this fund being denied, this suit was brought by them.

A demurrer was filed and sustained to the petition. An amendment was filed, stating that after the maturity of McKinney's debt, and finding that Parrish would be unable to meet same promptly, and while suit was pending, that McKinney and Parrish made an agreement that the suit should proceed, that judgment should be rendered, and that McKinney should buy this property, and that if Parrish or his wife, or any member of his family, chose to do so, and were able, that they should take up or secure this debt to McKinney and take and keep the property, this agreement being oral only. And plaintiffs say that after the sale and after the fire, Mrs. Parrish (who they say was always the beneficial and equitable owner) did make this arrangement in writing with McKinney, and that the policy of insurance was then for her use and benefit.

A demurrer was likewise sustained to the petition as amended, same dismissed, and hence this appeal.

Every policy of insurance is issued upon the express understanding and agreement, that the person insured is either the owner, legal or equitable, of the property insured, or at least that he has in some way a valuable and beneficial interest in same. This is of the essence or subject matter of the contract, many provisions being usually inserted to guarantee to the company the truth of this title, claim or insurable interest, and providing also that in case same is parted with, or in any way ceases to exist, before any loss, then the policy should cease and determine.

Such stipulations and provisions as these, being matters not of mere form, but of substance, and entering so clearly into the contract between the parties, the courts uniformly

uphold them. And the stipulation before quoted in this policy, providing that if the assured, Parrish, should in any way or manner, voluntarily part with the title to this property, or if same should be taken from him by judicial process, or by judgment of a court, before loss by fire, that then the liability of the company should cease, is valid and binding on the parties to this contract.

It is furthermore held by the courts quite generally, and we think correctly, that the property must remain the property of the insured; that whether there be a mortgage on it at the time the policy is issued, and a clause then inserted in the policy that in case of loss the insurance is to be paid to the mortgagee, or whether a mortgage be placed upon the property after the insurance is effected (with the consent of the insurance company), and an endorsement is then made by the company on the policy (as in this case), "that loss, if any, is payable to the mortgagee;" it is one and the same thing, the property remains the property of the original owner, and that there is no insurance by the mortgagee of his interest in it. Nor does the endorsement as made in this case transfer or assign the policy to the mortgagee, but the legal effect of the endorsement, "loss, if any, payable to the mortgagee," is only a contingent stipulation to so pay, or a contingent application by the company, with consent of the insured, that the money in case of loss shall be so paid.

And this interest of the mortgagee is further limited by the words, "as his interest shall appear," meaning, of course, his interest as mortgagee, not as owner. He must possess such an interest when the endorsement is made to make it a valid contract. And he must possess such an interest when the loss occurs, to entitle him by the plainest principles of his contract, and of the law, to recover.

And this right of recovery is also limited and made to de-

pend further on the continuance and validity of this mortgage as between the insurance company and the insured (the owner) at the time of the loss. And the courts hold that this mortgagee must take notice of and is bound by the stipulations contained in the policy between the company and the owner. And that any act done or any change in the title made by the owner, whether voluntary or by judgment of a court, whereby the title to the property passes to another, destroys this right of the mortgagee to recover under this stipulation to pay to him in case of loss.

Some of these principles have been indicated and judgments announced thereon by this court in the following cases: Bergman v. Commercial Assurance Co., 92 Ky., 494; Manhattan Insurance Co. v. Stein & Zang, 5 Bush, 659; Home Insurance Co. v. Allen, 93 Ky., 270.

Mr. May in his work on Insurance, sec. 378, quoting from the case of Fogg v. Middlesex Mut. Fire Ins. Co., 10 Cush., 337, says: "There is another species of assignment, or transfer it may be called, in the nature of an assignment of a *chose in action.* It is this: 'In case of loss pay the amount to A. B.' It is a contingent order or assignment of the money, should the event happen upon which money will become due on the contract. If the insurer assents to it, and the event happens, such assignee may maintain an action in his own name, because, upon notice of the assignment, the insurer has agreed to pay to the assignee instead of the assignor. But the original contract remains, the assignment and the assent to it form a new and derivative contract out of the original. But the contract remains as a contract of guaranty to the original assured; he must have an insurable interest in the property, and the property must be his at the time of the loss."

We find it announced by Mr. Berryman, in his Digest of

Insurance Law, 687, that where a mortgagee insured his interest as such in a house, and afterwards foreclosed the mortgage and purchased the property, under the decretal sale, it was held that the purchase extinguished his interest as mortgagee, and that he could not recover for a loss which happened after the sale.    In support of this he cites the case of Gaskin v. Phoenix Insurance Co., 6 Allen (N. B.), 429.

In addition to these authorities we find a well-considered case from Maine, which we think directly in point, and from which we make the following extracts.    It is Brunswick Savings Institution v. Commercial Union Insurance Co., 68 Me., 314, decided June, 1878.    We quote:

"On the 11th of September, 1874, Sophia. B. Merrill was insured in the Narragansett Insurance Co. in the sum of five thousand dollars on her dwelling house, and on that day surrendered her policy and in lieu thereof took the one in suit from the Commercial Union Insurance Co., which was a re-insurance procured by the Narragansett Insurance Company.    She had before that time mortgaged the house to the plaintiffs to secure the payment of thirty-five hundred dollars.    The condition of the mortgage had been broken, and the plaintiffs had commenced proceedings for foreclosure, but defendant had no knowledge thereof.    The foreclosure was perfected, and the title became absolute in the plaintiffs on the 24th day of July, 1875, before the loss.    By a clause in the policy the insurance is 'payable in case of loss to the Brunswick Savings Institution to the amount of mortgage held by them.' "

"The first specification of the conditions and stipulations in the policy, which are declared to constitute the basis of the insurance, among other things, contains the following: 'Or if the property be sold or transferred, or any change

take place in title or possession, whether by legal process or judicial decree, or voluntary transfer or conveyance, . . . then . . . this policy shall be void.'

"Under this policy, by the well-settled rule of law, Sophia B. Merrill is the assured. She was the general owner, had an insurable interest in the property, and paid the premium. The insurance was upon her property, and not upon the interest of plaintiffs as mortgagees."

A number of decisions are quoted to sustain this doctrine.

The opinion proceeds: "The clause in the policy, 'payable in case of loss to the Brunswick Savings Institution to the amount of mortgage held by them,' is not an insurance of the plaintiffs' interest in the property, nor an assignment of the policy to the plaintiffs. It is merely a contingent order or stipulation, assented to by the defendants, for the payment of the loss of the assured, if any, to the plaintiffs. It gives the plaintiffs the same right to recover that the assured would have if no such clause had been inserted in the policy. Any violation of the conditions and stipulations of the policy which would defeat the right of the assured to recover upon it, will defeat the right of the plaintiffs."

After citing other authorities the opinion continues:

"It remains to be determined whether the foreclosure of the plaintiff's mortgage was a transfer of, or change in, the title of the assured, within the meaning of the first condition and stipulation in the policy. Undoubtedly it was. When the policy was issued the assured had the general title. The plaintiffs' mortgage was an incumbrance. The foreclosure by the mortgagees was by 'legal process.' It was the process provided by law for the foreclosure of mortgages, and the extinguishment of the title of the mortgagors.

"When the provisions of the statute were complied with and the requisite time had elapsed, the mortgage, which before was an incumbrance, became absolute, and the alienation of the title of the assured became perfected. . . .

"It is not claimed that the defendants ever consented to the transfer of the title. By the foreclosure the assured ceased to have any title to, or insurable interest in, the property insured, and the policy thereby became void."

So, in this case on the 7th day of October, the time of the loss, McKinney had no interest in this property as mortgagee, which the defendants had contracted to protect. His interest as mortgagee had been merged in his perfect legal title.

Neither was Parrish any longer the owner. His right and title were then vested in another owner.

So, that, by the plain, unequivocal conditions and stipulations of the parties to this contract of insurance, as embraced in the policy, there was no longer existing either condition of the property, ownership or interest that defendant undertook to insure.

Neither do we regard it possible under and upon the conditions stated in the pleadings that Mrs. Parrish could have any insurable interest in this property at the time of the loss.. She was a total stranger to the contract of insurance in every way and manner.

We do not regard the conclusion we have reached discharging this insurance company from liability on the facts stated, as being at all on technical grounds, but on grounds forming the very basis and essence of the contract of insurance filed in the case.

Judgment affirmed.