## German Fire Insurance Co. v. Duncan.
(Decided Sept. 23, 1910.)

### Appeal from Anderson Circuit Court.

Fire Insurance—Conditional Sale of Property—Subsequent Convey-ance—Rights of Insured.—In an action by W. M. Duncan against the German Fire Insurance Company on a policy of insurance on a hotel building known as the Galt House, in the city of Law-renceburg, in February, 1909, which had been conveyed by Duncan to the United States for a postoffice. Held, that the ex-ecution and delivery of a deed to the United States, just prior to the fire, did not have the effect of divesting appellee Duncan of his title. In making the deed he was simply complying with a contract he had theretofore made. The title did not pass until the deed was finally accepted by the United States. The trans-action was not consummated until after the fire. Neither the conditional contract of sale nor the deed executed and delivered to the United States District Attorney, had the effect of divesting appellee of the beneficial ownership of the property at the time of the fire so as to avoid the policy of insurance.

WILLIS & TODD, GIBSON, MARSHALL & GIBSON, and WIL-LIAM W. CRAWFORD for appellant.

LILLARD CARTER and L. W. McKEE, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COM-MISSIONER—Affirming.

Appellee, William M. Duncan, was the owner of a lot of land in Lawrenceburg, Kentucky, on which stood a hotel building known as the Galt House. On January 2nd, 1909, appellee obtained from appellant a policy of insurance covering the premises in question, by which appellant undertook to insure appellee against loss by fire. On February 28th, 1909, the hotel property took fire. A part of the building was totally destroyed, and the remainder considerably damaged. Proof of loss was made, and appellant refused to settle; whereupon this action was instituted by appellee against appellant to

recover on the policy. The jury returned a verdict in favor of appellee for the sum of $1,333.33. From the judgment based thereon, this appeal is prosecuted.

Among the provisions of the policy was the following:

"This entire policy, unless otherwise provided by agreement endorsed hereon, or added hereto, shall be void if  *　*　*  the interest of the assured be other than unconditional ownership, or if the subject of insurance be a building on ground not owned by the assured in fee simple,  *　*　*  or if change, other than by death of the insured, take place in the interest, title or possession of the subject of insurance, except change of occupants without increased hazard, whether by legal process or judgment or by voluntary act of the insured or otherwise."

Appellant defended on the ground that there had been at the time of the fire such a change in appellee's interest and title as to avoid the policy. This change of interest and title it is contended was made in the following manner: Appellee was the owner of a lot 108x 162 feet in Lawrenceburg. In 1908 the United States, desiring to purchase a site for a federal building, inserted in the Anderson News, a newspaper published at Lawrenceburg, the following advertisement:

"Washington, D. C., June 6, 1908.

"Proposals will be received, to be opened at 2 o'clock p. m., July 10, 1908, for the sale or donation to  the United States of a suitable site,  centrally  and  conveniently located, for the federal building to be erected in Lawrenceburg, Kentucky. A corner lot,  of  (approximately) 120x130 feet, is required.  Each proposal must give the price, the character of foundations obtainable, the proximity to street cars, sewer, gas and water mains, etc., and must be accompanied by a diagram indicating the principal street, the north point, the dimensions and grades of the land, the widths and paving of adjoining streets and alleys, whether the alleys are public or private, and whether or not the city owns land occupied by sidewalks. The vendor must pay all expenses connected with furnishing evidences of title and deeds of conveyance. Improvements on the property must be reserved by the vendor; but pending the commencement of the federal building, they may remain on the land upon payment of a reasonable ground  rent.

The grantor must, however, remove all improvements on thirty days' notice so to do. The right to reject any proposal is reserved. Each proposal must be sealed, marked 'Proposal for Federal building site at Lawrenceburg, Kentucky,' and mailed to the Secretary of the Treasury (Supervising Architect), Washington, D. C. No special form of proposal is required or provided.

"GEO. B. CORTELYOU, Secretary."

In answer to this advertisement, appellee wrote the following letter:

"Lawrenceburg, Ky., June 12, 1908.

"Secretary of Treasury, Supervising Architect,

"Washington, D. C.

"Dear Sir:—Answering advertisement for proposal for sites for Government building at Lawrenceburg, Kentucky; I beg to herewith submit for your consideration a site, as per dimensions specified and at price attached. If there is anything further in connection with the bid that has been overlooked, I shall be glad if you will promptly advise me. Very truly yours,

"W. M. DUNCAN."

Accompanying this letter was a statement containing the size of the property site and showing its location with respect to the streets and alleys of the town, and the water mains and sewer pipe. It also specified that the improvements consisted of a two-story brick, metal roof hotel building of the dimensions of 47x110 feet. The price was fixed at $7,500.00, which included the buildings and improvements which were to be removed by the vendor, when so directed, at his expense. The statement also specified that the title papers, deeds and conveyances and all other matters connected with the proposal as advertised would be promptly complied with.

On November 14th, 1908, Duncan modified his offer by cutting off the lot 32x108 feet of unoccupied ground, and reducing the price to $7,200.00. On December 18th, 1908, the Assistant Secretary of the Treasury wrote Duncan asking him for a further reduction of the price. Duncan declined to make any further reduction. On January 6th, 1909, the Secretary of the Treasury wrote appellee the following letter:

"Sir:—Your proposal of June 12, 1908, as modified by your letter of November 14, 1908, to sell to the United States for seven thousand two hundred dollars

($7,200.00), the land hereinafter described, as the federal building site at Lawrenceburg, Kentucky, under the authority contained in the Public Building act of May 30, 1908, is hereby accepted upon the following conditions:

"First.   That within sixty days from this date, and without expense to the United States, you will cause to be executed and delivered all requisite abstracts, official certificates, evidences of title and deeds of conveyance, necessary in the opinion of the Attorney General of the United States, to convey to the United States a satisfactory title to said land; and,

"Second. That within thirty days after written notice you will cause all buildings and other improvements to be removed from said site and the land left clean, all without expense to the United States and to the satisfaction of the custodian of the site (to be hereafter appointed).

"The land to be conveyed to the United States is described as follows:

"Lying and being in Lawrenceburg, Kentucky, fronting one hundred and thirty feet (130) on the north side of East Woodford street, and extending northwardly of that width along the east side of North Main street, one hundred eight and one-half feet (108 1-2), more or less, as shown on the plat which accompanied your proposal, being your whole frontage on Main street.

"The Attorney General of the United States has today been requested to give to the United States Attorney for the district in which Lawrenceburg is situated, such instructions as may be necessary to procure the conveyance of said land to the United States; and when the required examination shall have been completed, to transmit the papers to this department with his opinion as to the validity of the title.   When you have satisfactorily complied with the conditions of this acceptance, and upon the receipt of a favorable opinion from the attorney general, the department will take steps toward the payment of the purchase money.

"You should apply to the United States Attorney for your district for instructions as to the papers to be furnished by you.

"Will you please promptly acknowledge receipt of this letter?   Respectfully," &c.

On January 9th, 1909, appellee sent to the Secretary of the Treasury the following reply:

"My Dear Sir:

"Your letter of 6th instant, relative to sale to United States the land mentioned in that letter for the sum therein named, and upon the conditions set out therein, I have to advise you that I will as speedily as possible seek to comply with the conditions therein named. I can not see how there will be any difficulty in complying fully with the first conditions named in your letter of the above date, but the second condition merits some consideration. The time named in that condition for the removal of the buildings in thirty days, and, as I have stated heretofore, the buildings on the property now are of brick, and large, and the facilities in a small town like this, for house wrecking are not great. I would desire, if possible, a longer period of time for the removal of the buildings, but, of course, if time was the very essence of the matter, I would seek to remove them within thirty days, but feel that that time, in view of the fact that a longer time could be granted, ought not to be insisted upon as a condition of the sale. However, that condition is accepted by me, and I will undertake to remove the buildings in that time, but would like to have an extension, if possible, for a little longer.

"In the specifications advertised in a local paper, some statements were made as to ground rent in the event of a sale.

"I should be glad to enter into negotiations relative to ground rent for these premises, in the event a sale is finally consummated under the consideration and conditions named in your letter of the 6th inst.

"W. M. DUNCAN."

On January 13th, 1909, the assistant secretary of the treasury wrote appellee a letter containing the following:

"In response to your communication of the 9th instant, you are informed that if the title to your property which the department has selected for the Federal building site at Lawrenceburg, Kentucky, proves acceptable to the attorney general and the sale is duly consummated, the department will be willing to take up with you the question of allowing more than thirty days in which to remove the buildings on the premises."

Thereafter appellee prepared a deed and abstract of title which he forwarded to J. H. Tinsley, United States District Attorney, but the deed and abstract were found

to be defective and returned to appellee. On February 9th, 1909, appellee and his wife executed and acknowledged a new deed and prepared an amended abstract. These were delivered to J. H. Tinsley, the district attorney, on February 25th, 1909. The deed and abstract were not approved by the attorney general until some time after February 28th, 1909, the date of the fire. On April 3rd, 1909, the deed was put to record and the purchase price of $7,200.00 paid to appellee.

It is insisted that the foregoing facts show that, at the time of the fire, appellee had parted with the beneficial ownership of the property, and that the trial court erred in instructing the jury that appellee was the sole owner in fee simple of the building at the time of the fire. It may be admitted that such stipulations and provisions against change of interest, title and possession, as the policy in question contains, have been upheld by this court. (McKinney v. Western Assurance Co., 97 Ky. 479.) The sole question then, is: Had appellee, at the time of the fire, parted with his interest in or title to the property? In this connection counsel for appellant insist that, under the rule laid down in Marks v. Tichenor, 85 Ky. 537, and Cottingham v. Fireman's Fund Ins. Co., 90 Ky. 439, where it is held that where there has been a written contract of sale, which has been executed, delivered and accepted by the vendor, the property sold becomes the property of the vendee, and that if the buildings thereon are destroyed by fire between such contract of sale and the time fixed for delivery of possession to the vendee, the loss falls upon the vendee and not the vendor, appellee had parted with his interest in and title to the property. But an examination of those two cases, and others announcing the same doctrine, will show that there was an absolute and unconditional sale of the property involved. In the case of Marks v. Tichenor, supra, the language of the contract is: "I have this day sold to James A. and Samuel C. Marks my farm, known as the Daniel McFarland farm." In the case of Cottingham v. Firemen's Fund Ins. Co., supra, the language of the contract is: "This contract witnesseth, that we, C. L. and H. A. King, have this day swapped or exchanged property with Albert Cottingham as follows: We, C. L. and H. A. King, give Cottingham the G. H. Cottingham house and lot for the Albert Cottingham house and lot, formerly owned by James A. Watson, and the lot west of

the house. * * * Deeds to be made soon." In each of these cases the court held that the grantors had parted with their beneficial interest in the property described in the contracts.

In the case under consideration, no such contracts are involved. The secretary of the treasury advertised for proposals. Appellee submitted for his consideration a certain site and submitted a proposal. This proposal was not accepted by the United States unconditionally. The acceptance was upon two conditions: First, that Duncan should, within sixty days and without expense to the United States, cause to be executed and delivered all requisite abstracts, official certificates, the evidences of title and deeds of conveyance, necessary in the opinion of the Attorney General of the United States to convey to the United States a satisfactory title to said land; second, that upon thirty days' notice Duncan would remove the buildings from the land. The letter of acceptance also makes it plain that a favorable opinion from the Attorney General of the United States was necessary in order to make the sale binding. Here, then, we have a case not of absolute sale, but of a conditional sale. While it is true that appellee had bound himself to comply with the terms of his proposal, he did not part with his interest in or title to the property until the conditions upon which the sale were made were complied with, that is, until the attorney general had reported favorably upon the title and the contract was accepted by the United States. Until that time his interest in the property did not pass to the United States. This is the construction placed upon the transaction by the assistant secretary of the treasury, who shows by his letter of January 13th, 1909, that the sale was not to be duly consummated unless the title furnished by appellee proved acceptable to the attorney general.

Nor do we think that the execution and delivery of the deed to the property, to the United States District Attorney, just prior to the fire had the effect of divesting appellee of his title. In furnishing the deed, he was simply complying with a contract which he had theretofore made. The title did not pass until the deed was finally accepted by the United States. The United States District Attorney was not authorized to accept the deed; he was only the agent of the government through whom the deed was to be transmitted to the attorney general, who

alone had authority to pass upon the sufficiency of the deed and abstract. At the time of the fire the conditions upon which appellee's proposal was accepted had not been complied with. The transaction was not consummated until after the fire. Neither the conditional contract of sale nor the deed executed and delivered to the United States District Attorney had the effect of divesting appellee of the beneficial ownership of the property at the time of the fire so as to avoid the policy of insurance.

We are unable to say that the jury erred in its finding as to the value of the premises destroyed and injured. They were called upon to determine the reasonable value of the premises injured and destroyed—not the value of the premises considered in connection with appellee's contract with the United States.

Judgment affirmed.