SPRINGFIELD FIRE & MARINE INS. CO. v. BOON. (No. 1706.)

(Court of Civil Appeals of Texas. Texarkana. March 1, 1917. Rehearing Denied March 29, 1917.)

1. INSURANCE ☞665(3) — ACTION ON FIRE POLICY—FORFEITURE—SUFFICIENCY OF EVIDENCE.

In action on a fire insurance policy, evidence *held* to show a violation of provisions forfeiting policy in case of change in insured's interest or continued vacancy of buildings.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1711–1716.]

2. INSURANCE ☞328(1)—FIRE—NECESSITY OF OWNERSHIP.

The existence of an interest in the insured in property covered by the fire insurance policy is indispensable to its validity, since the contract is one of indemnity, and when such interest ceases the policy becomes invalid.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 794.]

3. INSURANCE ☞328(14)—FIRE—VALIDITY OF POLICY—CHANGE IN TITLE.

Where insured's trustee sold property under trust deed, purchaser agreeing to deed property back to trustee, the insured ceased to have any interest therein, and the policy became void, which invalidity could not be waived, but liability must be re-established by a new contract, and insured's only remaining interest was right to demand unearned premium.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 815–817.]

4. INSURANCE ☞215—FIRE—CHANGE IN TITLE—PURCHASER'S RIGHTS.

The purchaser of insured property is not entitled to indemnity provided by the policy unless it has been assigned to him with insurer's consent.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 485.]

5. INSURANCE ☞665(2) — ACTION ON FIRE POLICY—EXISTENCE OF NEW CONTRACT AFTER FORFEITURE—EVIDENCE.

In action on fire insurance policy, evidence *held* insufficient to show execution of a new contract after insured had parted with title.

[Ed. Note.—For other cases, see Insurance. Cent. Dig. § 1709.]

Error from District Court, Smith County; R. M. Smith, Judge.

Action on fire insurance policy by C. W. Boon, trustee, against the Springfield Fire & Marine Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed, and judgment rendered for defendant.

To secure their indebtedness to various persons W. O. Stamps & Co., by a deed dated April 17, 1914, conveyed five wooden dwelling houses and the land on which they were situated, owned by them, to defendant in

error as trustee. November 17, 1914, when the trust deed was in force, plaintiff in error issued to Stamps & Co. a policy insuring the buildings against fire in the sum of $1,500 until November 17, 1917. Attached to the policy was a "loss payable clause" providing that any loss or damage ascertained or proven to be due Stamps & Co. under the terms of the contract should be payable to Boon, trustee, as his interest appeared, "subject, however, to all the terms and conditions" of the policy. It was stipulated in the policy that it "covered not exceeding $300 on each dwelling insured." The policy also contained stipulations as follows:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if, * * * with the knowledge of the insured, foreclosure proceedings be commenced. or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed; or if any change, other than by the death of the insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment or by voluntary act of the insured or otherwise, * * * or if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days."

February 19, 1915, four of the five houses covered by the policy were totally destroyed by fire.

This was a suit by defendant in error, Boon, as trustee, to recover of plaintiff in error $1,200, which he claimed to be entitled to by the terms of the policy.

As a defense to the suit plaintiff in error alleged a violation of the stipulations in the policy set out above, and as supporting its allegations proved: (1) That before the fire occurred, with knowledge of the insured, Boon, as trustee, in accordance with the deed to him and the law, had given notice of a sale of the houses to be made by him by virtue of the trust deed; (2) that Boon, as trustee, on February 2, 1915, at a public sale made by him as trustee as advertised, sold the property to the Moore Grocery Company; and (3) that when the fire which destroyed the houses occurred three of the five covered by the policy were, and for more than ten days before the fire occurred had been, vacant.

Defendant in error sought to avoid the forfeiture so alleged and proven by plaintiff in error, on the ground that the latter had waived its right to declare and enforce same, and proved, as found by the trial court, facts as follows: At the time Boon as trustee sold the property to the Moore Grocery Company it was understood and agreed between them that, when he conveyed the property to the grocery company as the purchaser at the sale thereof, the grocery company would reconvey same to him as trustee for the creditors named in the deed to him from Stamps & Co. In compliance with this agreement, after Boon, as trustee, on February 10, 1915, conveyed the property to the grocery company, it on the same day reconveyed same to Boon as trustee. At the time these conveyances were made Boon informed John A. Mathis, who, as plaintiff in error's local agent, issued the policy, of the making of the conveyances. On receiving such information Mathis did not offer to return the unearned premium paid on the policy, but advised Boon "if any changes were to be made in the policy to inform him and he (Mathis) would attend to the matter." Boon, however, at no time thereafterwards requested any change to be made in the policy. On the day the fire occurred Boon, who lived in Tyler, having been advised thereof, wrote Mathis, who lived in Gilmer, requesting him to ascertain "just what houses" covered by the policy had been destroyed, and to make out and send to him for his execution the proof of loss necessary for him to make to collect the insurance on the buildings. Mathis, on receipt of Boon's letter, went to Ore City, where the houses were situated, to make an investigation, and afterwards, on February 23, 1915, wrote Boon as follows:

"I have notified the company of the loss of four small dwellings at Ore City. I also notice three of the four dwellings were vacant. The adjuster will want a statement of the cost to rebuild these houses so you will get some carpenter who is acquainted with the buildings to get this up for you."

· In reply Boon wrote Mathis as follows:

"As you are familiar with the carpenters in Gilmer, and those that can be depended upon to do what is right, I want to ask you to please make the best trade you can with some good reliable carpenter to go over to Ore City and find out just what kind of dwellings these were and make up the proof of loss under your directions, so as to file it with you for the four dwellings burned. I am willing to leave this matter with you, and ask you to handle it just as you would if it were your own property. All you want is what is right and that is all I want for the creditors. I am inclosing you self-addressed stamped envelope, and will be glad to have you write me just as soon as you have made the trade with some carpenter, giving me his name and what he will charge for making up this proof of loss and estimate of what it will cost to rebuild these houses."

In reply Mathis, on March 1, 1915, wrote Boon as follows:

"I can get you a good carpenter to go from here to Ore City and make estimate on the buildings for $10. It will take all day and $3.50 for a team. If this is satisfactory let me know at once, and I will have the estimate made."

"Upon the request and direction" of plaintiff in error after it had "learned all of the facts ,with reference to the fire, and after having learned that three of the buildings were vacant for more than ten days prior to the fire," quoting from the findings of the court, Boon "went to an expense of $13.50 in getting up and having prepared an estimate of the cost of rebuilding said dwellings." Plaintiff in error never offered to return to Boon any of the premiums paid by him at the time the policy was issued to him.

The findings just recited of the trial court seem to have support in the testimony, except the one that at the time Boon conveyed

to the grocery company and the grocery company back to Boon plaintiff in error's local agent, Mathis, was informed by Boon of the making of said conveyances. We have not been able to find in the record any testimony showing that Boon ever said anything to Mathis about the execution of those instruments, and it appears from the testimony in the record that as a matter of fact they were not executed until six or eight days after the time when the property was sold as stated. On the day of the sale of the property by virtue of the trust deed to Boon he and Mathis had a conversation about the property. That conversation seems to have been the basis of the finding referred to, and, as we understand, it does not support it. With reference to what then passed between him and Mathis, Boon testified as follows:

"I cannot remember now the exact conversation. Mr. Mathis, however, met me on the street and spoke to me about insurance policies, and I stated to him that there was really no change in the property; that I would simply hold the property as trustee as I had before that time. I went into details with Mr. Mathis, the substance of which was— I can't remember whether I stated to him that Moore Grocery Company had bought the property and would redeed it to me at once as trustee, or whether they were going to buy the property, and in that case would redeed it to me as trustee. I do not remember whether this conversation took place before or after the sale. If it did take place before the sale, then I stated to him that Moore Grocery Company would buy the property and redeed it to me; if it took place after the sale, I stated to him that they had bought the property and would redeed it to me. Mr. Mathis did not tell me in just those words that when the matter was fixed up it would be necessary for me to procure an indorsement on the policy. He however, did say that if there was any change to be made in the policies whatever changes there were to be made to let him know and he would make them. He did not advise me that it would not be necessary to make any changes in the policy. I did not thereafter advise him of any change or request any change or indorsement on the policy. He did not advise me at the time I had this conversation with him that it would be necessary to make some change in the policy in question. I was just going down the street, not expecting to see Mr. Mathis at all, but he met me on the street, and he himself brought up the subject to this insurance. Mr. Mathis did not tell me that when the deal was completed it would be necessary if the insurance was kept in force to have it transferred to the purchaser, and I did not state to him that the necessary attention would be given to it in due time. Mr. Mathis had full knowledge and was thoroughly conversant prior to the fire in question of this transaction whereby I conveyed as trustee the property in question to the Moore Grocery Company and whereby the Moore Grocery Company reconveyed same to me as trustee."

Mathis' account of the conversation was as follows:

"The conversation was short and casual. I just happened to meet Mr. Boon. He told, as I recall, that he had just sold W. O. Stamps & Co.'s property at auction, but that the deal was not completed, and I told him that when the deal was completed it would be necessary if the insurance was kept in force to have it transferred to the purchaser, and he said that the necessary attention would be given to it in due time."

On the facts found by him as recited above, the court concluded as a matter of law that plaintiff in error was in the attitude of having waived the forfeiture it asserted as a defense against the recovery wrought by defendant in error, and thereupon rendered judgment against plaintiff in error for $1,200.

Locke & Locke, of Dallas, for plaintiff in error. Price & Beaird, of Tyler, for defendant in error.

WILLSON, C. J. (after stating the facts as above). [1] That each of the stipulations avoiding the policy, set out in the statement above was violated was indisputably established by the testimony. That a violation during the life of the policy of either of the stipulations, on the election of plaintiff in error to so treat it, terminated the contract, was established by the authorities. 2 Cooley's Briefs on Law of Insurance, 1489 et seq., and authorities there cited; 19 Cyc. 712 et seq., and authorities there cited; Insurance Co. v. Griffin, 59 Tex. 509; Assur. Society v. Ellis, 137 S. W. 184; Id., 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625; Insurance Co. v. Clayton, 17 Tex. Civ. App. 644, 43 S. W. 910; Bank v. Insurance Co., 201 Mass. 350, 87 N. E. 594, 23 L. R. A. (N. S.) 1147; McKinney v. Assur. Co., 97 Ky. 474, 30 S. W. 1004; Insurance Co. v. Long, 51 Tex. 89; Insurance Co. v. Coghlan, 134 S. W. 266. It is plain, therefore, even if the contract was terminated by the devesting of the title in the insured (Stamps & Co.) to the property, so as to relieve plaintiff in error of liability to defendant in error, without reference to the proven violation of the stipulations referred to, that the judgment is wrong, unless for some reason the law recognizes as sufficient plaintiff in error was not entitled to assert the violation of those stipulations as a defense against the recovery sought against it.

Defendant in error contended, and the trial court agreed, that such a reason appeared in testimony relied upon to prove that plaintiff in error was in the attitude of having waived its right to treat the contract as terminated by the violation by the insured of the stipulations. Plaintiff in error controverts this, insisting that the testimony wholly failed to show such waiver by it.

In the view we take of the case such a question was not presented, unless it cannot be said that, independent of the stipulations, the contract was terminated by the devesting of the title in Stamps & Co. to the property covered by the policy; for if it was so terminated there was no contract existing between the parties, and no stipulations to waive.

[2] It is well settled that a contract of insurance like the one in question is one of indemnity, and that the existence in the insured of an interest in the property covered by it is indispensable to its continued valid-

ity. When the insured ceases to own the property and any interest in it, the policy ceases to be a valid obligation on the part of the insurer. 1 Cooley's Briefs on Law of Insurance, 134 et seq.; 19 Cyc. 583 et seq.; 14 R. C. L. 905 et seq.

[3] It conclusively appeared from the testimony that Boon, by virtue of the trust deed to him, on February 2, 1915, sold, and on February 10, 1915, by a warranty deed conveyed, the property covered by the policy to the Moore Grocery Company. The legal effect of this conveyance was to devest Stamps & Co., the insured, and Boon, as trustee, of all right, title, and interest theretofore held by them in and to the property. When that conveyance became effective on February 10, before the fire occurred on February 19, 1915, the insured, Stamps & Co., ceased to have an "insurable interest" in the property, and the contract of insurance evidenced by the policy terminated. The only right, if any, remaining in Stamps & Co. with reference to the policy, it never having been assigned or transferred by them to any one, was a right to demand and receive of plaintiff in error the unearned part of the premium paid by them for the policy. No right whatever under the contract remained in Boon, for he was a mere appointee to receive, in the event of a loss within the terms of the contract, the sum Stamps & Co. were found to be entitled to, and hence his rights were wholly dependent upon the rights of Stamps & Co. 2 Cooley's Briefs on Law of Insurance, 1520 et seq.

[4] The rule and reasons for it were well stated by the Supreme Court of Iowa, in Davis v. Insurance Co., 154 Iowa, 326, 134 N. W. 860, as follows:

"If any one proposition can be regarded as having been definitely settled by early adjudications, and as having remained definitely settled, notwithstanding constant modifications of the law on the subject of fire insurance by changes of view on the part of courts and of policy on the part of Legislatures, it is the proposition, made up of three distinct elements working together to one result, that the purchaser of the absolute title and right to property covered by a fire insurance policy is not entitled to the indemnity provided for in the policy on account of a damage to or destruction of the property subsequent to the transfer, unless, by the consent of the insurer, the policy has been assigned to the purchaser by the former owner. The three elementary principles of fire insurance which, working together, bring about this inevitable result, are: First, that a policy of fire insurance is a contract of indemnity, and if, at the time of loss, the holder of the policy has no right, title, or interest to or in the property insured, he cannot recover anything under his contract of insurance, for the damage to or destruction of the property results in no injury to him; second, that the purchaser of the property, taking it prior to the loss, is not a party to any contract of insurance between the former owner and the insurer, and therefore is not entitled to recover under such contract; and, third, that the contract of fire insurance, being personal in its nature, cannot be transferred by the insured to another, save in accordance with provisions of the contract itself, involving the express or implied assent of the insurer, or a valid contract of the insurer that it shall become liable to the new owner. These elementary propositions are not dependent on any stipulations, conditions, or limitations of the contract itself, but result from the very nature of the contract, though, of course, they may be superseded or waived by provisions in the contract, or by a new valid contract or agreement subsequently made."

It is plain from what has been said, we think, that at the time the fire occurred the policy issued to Stamps & Co. was not a valid and subsisting contract on the part of plaintiff in error to indemnify defendant in error for the loss he thereby incurred, and that the court erred in rendering judgment in his favor, unless it can be said that it appeared from the testimony before him that plaintiff in error by a new and independent contract, based on a sufficient consideration, had undertaken to do so.

[5] If there was such testimony, it consisted of the proof made by defendant in error to show, not the formation of a new contract between him and plaintiff in error, but a waiver of the breach of the stipulations in the one between Stamps & Co. and plaintiff in error. Viewing that testimony in its aspect most favorable to defendant in error, it showed no more than that plaintiff in error's agent before the title in Stamps & Co. had been devested by the conveyance to the Moore Grocery Company, and before the fire occurred, agreed, without consideration therefor paid or to be paid by any one, to make such changes in the policy as might be necessary to continue it in force as indemnity to the Moore Grocery Company and Boon, as trustee, against loss or injury to the property by fire; after the fire occurred recognized the policy as a subsisting contract; at Boon's request arranged with a carpenter to furnish him an estimate of the cost of rebuilding the destroyed houses, for use in making proof of loss to be furnished plaintiff in error; and that Boon paid carpenter $13.50 for such an estimate.

It is plain that what Boon and plaintiff in error's agent, Mathis, had in mind when the conversation between them occurred was that Mathis, as such agent, would do for plaintiff in error what it was necessary for it to do to continue the policy issued to Stamps & Co. in force as indemnity to the purchaser at the sale made by Boon as trustee. The thing necessary for defendant in error to do to accomplish that was to consent to a transfer of the policy by Stamps & Co. to such purchaser. If it appeared from the record that Stamps & Co. at the time the sale was made by the trustee, or before the time when the trustee executed and delivered the deed conveying the property to the Moore Grocery Company, had transferred the policy to said grocery company, we are not prepared to say that the testimony in the record would not be sufficient to show that plaintiff in error consented to the transfer and was estopped from asserting that the contract did not continue in force, and from setting up as a de-

fence to defendant in error's suit violations of the stipulations against foreclosure proceedings under the trust deed and a change in the title to the property.

It is also plain, we think, that in the correspondence between them both Boon and Mathis lost sight of the fact that (Stamps & Co. having failed to transfer it at a time when they had an insurable interest in the property) the policy ceased to be a subsisting obligation on the part of plaintiff in error on the execution and delivery of the deed to the Moore Grocery Company, and dealt with each other on the supposition that it was still a valid and subsisting contract. That this is true appears from the fact that it seems never to have occurred to either of them, that to bind plaintiff in error to indemnify defendant in error it was necessary that they should make an entirely new contract supported by a new consideration.

It appears, therefore, that to affirm the judgment this court must hold, and we think it should not, that the effect of what passed between Boon and Mathis was to create a new contract, as distinguished from a modification of the old one—a thing they plainly did not intend to do, and a thing they as plainly could not do so as to bind plaintiff in error, in the absence, as was the case, of a consideration therefor. To so hold in effect would be to make for the parties a contract they never contemplated making, and to compel plaintiff in error, without any consideration whatever to it for doing so, to indemnify Boon against the loss he incurred as trustee.

We are of the opinion, therefore, that the trial court erred, as contended by plaintiff in error, in not rendering judgment in its favor. Therefore the judgment will be reversed, and judgment will be here rendered that defendant in error take nothing by his suit.