# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

THIRD DISTRICT—MAY TERM, 1887.

THE GERMAN INSURANCE COMPANY OF FREEPORT

v.

CHARLES F. CHURCHILL.

*Fire Insurance—Mortgage Clause—Inconsistent Provisions—Foreclosure—Change of Interest as a Defense.*

1. Where mortgaged property is insured, while involved in litigation and after the commencement of foreclosure proceedings, for the benefit of the mortgagee and his assigns, and a loss occurs after the foreclosure sale, the insurer can not defend on the ground of change of interest or ownership of the property.

2. Where there is a manifest inconsistency between the provisions of the policy and the mortgage clause, as applied to the situation when the policy was issued, the provisions of the mortgage clause will control.

[Opinion filed November 18, 1887.]

APPEAL from the Circuit Court of McLean County; the Hon. O. T. REEVES, Judge, presiding.

Messrs. THOMAS BATES and F. R. HENDERSON, for appellant.

Messrs. KERRICK, LUCAS & SPENCER, for appellee.

WALL, J. This was assumpsit on a policy of insurance. On a trial by the court, a jury being waived, there was judgment

(206)

for the plaintiff. In substance, the chief objection urged to the judgment is that there had been a change in the interest or ownership of the property and that the company had not waived its right to this defense.

A brief reference to the leading facts is necessary at this point. The property insured belonged at one time to John R. Snyder, who, becoming embarrassed in business, desired to raise money upon it. He conveyed it to Churchill, the appellee, who executed his note for $12,000, and to secure it a mortgage upon the property. Snyder assigned the note and mortgage to the Union National Bank of Chicago, and soon after conveyed his property in trust to pay his creditors. Litigation ensued in the McLean Circuit Court and soon became somewhat complicated. Among other suits in this connection there was a bill in chancery by some of Snyder's creditors against the Chicago bank and others charging that the assignment of the Churchill note and mortgage to the bank was a fraud upon the rights of the other creditors, praying for a receiver, etc., and there were such proceedings in this chancery case that the bank transferred its claim on the note and mortgage to Jordan and Pike who were appointed receivers in the premises.

These receivers, Jordan and Pike, then filed their bill to foreclose this mortgage. It was while this foreclosure suit was pending that Churchill applied for and obtained the present policy of insurance. The local agent who lived in the town where the property was situated, knew as well as Churchill that it was involved in litigation and that it was incumbered by this mortgage which really represented its full value. They both knew that the bank held this security and that there was confusion and contention in regard to it among the creditors. They probably did not know definitely the situation and the agent swears he was not aware that the foreclosure suit had been commenced.

Whatever they did know, or did not know, it was understood that the note and mortgage, which represented the value of the property, was or had been in the hands of the bank and was the subject of contesting claims among the creditors.

This they actually knew. Constructively, they knew what was disclosed by the record of the Circuit Court of McLean County, which was public, and gave notice to all concerned so far as the *status* and title of the property were affected.

In this condition of things it was suggested by the agent that the policy should contain this clause: "Loss, if any, payable to the Union National Bank, Chicago, Ill., or its assigns, as their mortgage interest may appear. Mortgage clause attached."

This was written in the body of the policy. Attached to the policy was the mortgage clause referred to which began with the words: "Loss, if any, payable to Union National Bank of Chicago, Ill., or its assigns, mortgagee or trustee, as hereafter provided." Then follow sundry conditions which need not be specially stated, beyond saying that the clear purpose was to regard the interest of the mortgagee as the special object of protection; providing that the mortgagee should pay for any increase of hazard that might occur, and notify the company of any change of ownership or increase of hazard that should come to his knowledge, and have permission for such change or increase duly indorsed on the policy; reserving the right to the company to cancel the policy and to cancel this mortgage clause, and providing that in case of payment of any loss the company should be subrogated to the right of the mortgagee to the extent of such payment. After this policy was issued the foreclosure suit progressed to a decree as prayed and a sale by the master. At this sale the property was bought in by J. C. Kerrick, one of the attorneys for the receivers, and, as he says, for their account and benefit.

Just before the sale, and to be considered as a part of the transaction, there was an agreement between Churchill and Kerrick that the latter would bid the full amount of the decree and costs, and in consideration thereof Churchill gave Kerrick a lease of the property during the ensuing fifteen months and paid him $500, it being further agreed that Churchill might at any time within the fifteen months acquire the certificate by paying the amount of the bid, less the sum paid by him to Kerrick and the rent received by Kerrick up to such time, and assigned all insurance policies to Kerrick.

German Ins. Co. of Freeport v. Churchill.

There is evidence tending to prove that after this sale Haynes, who was interested as a creditor of Snyder, at the instance of Kerrick took the policy to the agent who issued it and, informing him of the sale by the master and the purchase by Kerrick, asked him to make any change or assignment that might be necessary; to which the agent replied that it was unnecessary, and, turning to the mortgage clause, showed it to him and explained that nothing was required; that the policy " did not need assigning; it was good as it was." The agent does not agree with this statement, but it is clear that Haynes reported it to Kerrick, who, believing it to be true and assuming the policy to be valid in his favor, took no further steps to protect himself. Whatever may have been the substance of this conversation between Haynes and the agent it is very clear the latter was sufficiently informed of the situation and that neither he, nor any other agent of the company, disclosed any purpose to cancel the policy, but suffered Kerrick to rest under the impression that the insurance was unaffected by what had occurred since the policy was issued. The policy contains very stringent provisions to the effect that no assignment shall be valid until it is indorsed thereon and approved by the company, and that in case of any change of the title or of any interest therein without such consent, or if the property is in litigation or advertised for sale under any deed of trust or mortgage, or if a suit be commenced to foreclose a mortgage on the property, the policy should at once become void, and that nothing should be deemed a waiver of any printed condition or restriction short of a distinct agreement indorsed on the policy, nor should notice to, or consent of, a local agent affect any such condition. Assuming that the conditions of the policy were violated by the facts stated, the company depends upon them for its defense. There is a manifest inconsistency between these provisions and those of the mortgage clause as applied to the situation at the time the policy was issued. As we have shown, the mortgage clause, which is the latest expression of the contracting parties and must control if there is conflict with other provisions, made the mortgagee the beneficiary and made his interest and that of

his assigns the sole object of protection. When this is considered in connection with the circumstances then existing it would be unreasonable to apply, for example, the condition that the policy should be void in case of a foreclosure suit being commenced. The very object was to protect one whose interest would probably compel him to bring such a suit, and who, as a matter of fact, as the records disclosed, was at that time prosecuting such a suit. Again, it provides for the payment of the loss, if any, to the mortgagee or its assigns, which is inconsistent with the provisions against assignment without consent indorsed. Jordan and Pike were the assigns of the bank and Kerrick was, in fact, but their agent and representative. From prudent and cautious motives Kerrick caused the agent to be notified of what had occurred so that he might have the necessary indorsements made, but the agent was, no doubt, correct in his view, as reported by Haynes, that nothing of the kind was required and that the policy was good as it was. The proceedings to foreclose and the purchase at the master's sale were within the purview of the mortgage clause and furnish no ground of exemption from liability under the clauses forbidding an assignment of the property, etc., above referred to. Such proceedings must have been contemplated when the policy with this clause attached was issued, and if there could be any doubt as to whether they are within the scope of the contract of insurance thus made, the fact that the company, through its agent, so expressly disclosed and, although cognizant of the situation, did not cancel the policy, but retained the unearned premium without objection, must, under numerous precedents of undoubted value and authority, estop the company from making the defense. May on Ins. Chap. 22; Reaper City Ins. Co. v. Jones, 62 Ill. 458; Williamsburg Ins. Co. v. Cary, 83 Ill. 453; Hallis v. State Ins. Co., 65 Iowa, 454.

We are of opinion there is no merit in the objections interposed, and that the judgment of the Circuit Court should be affirmed.

*Judgment affirmed.*