[No. 16266.  Department One.  May 14, 1921.]

STIMSON MILL COMPANY, *Respondent,* v. ROGERS,
MYLROIE LUMBER COMPANY, *Appellant.*[1]

APPEAL (418)—REVIEW—FINDINGS.  A finding of the trial court
based on conflicting evidence will not be reversed on appeal, where it
cannot be said that the preponderance of the evidence is against
the finding.

CONTRACTS (156)—BREACH—FAILURE OF PERFORMANCE.  In an ac-
tion for damages for breach of a contract to furnish a certain
quantity of railroad ties of specified grade and sizes, which were
to be kept separate on making delivery aboard ship, the liability of
defendant was established, where it refused to complete its con-
tract on the ground that its first partial delivery was not accepted
in full, the evidence showing that many of the ties did not comply
with specifications, and that the different kinds of ties were so
intermingled that the stevedores, after partially unloading the barge,
refused to handle the rest of the load; the fact that some of the
suitable ties were lost overboard and others were not accepted ow-
ing to defendant's noncompliance with the condition against inter-
mingling affording no excuse for refusal to perform the balance of
the contract.

DAMAGES (64, 71)—MEASURE OF DAMAGES—BREACH OF CONTRACT—
DEFECTS IN PERFORMANCE—MARKET VALUE.  In an action for damages
for breach of contract to supply a special kind of railroad ties, which
the proof showed were superior to standard ties, it was not error
to base the measure of damages on the market value of standard
ties at the time and place they were required to be delivered, in-
stead of basing the measure on the market value of the special class
of ties in the nearest available market for that class, less the cost
of transportation to such market.

Appeal from the judgment of the superior court for
King county, Abel, J., entered July 12, 1920, upon find-
ings in favor of the plaintiff, in an action on contract,
tried to the court. Affirmed.

*Alexander, Bundy & Swale* and *William H. Gorham,*
for appellant.

*Chadwick, McMicken, Ramsey & Rupp,* for respond-
ent.

[1]Reported in 197 Pac. 919.

FULLERTON, J.—The respondent, Stimson Mill Company, owns and operates a lumber mill at the city of Seattle. On April 4, 1919, it entered into a contract with Chas. R. McCormick & Company, by the terms of which it agreed to deliver, prior to August 1, 1919, at ships tackle, in the Seattle harbor, a quantity of railroad ties sufficient to load three government vessels, the estimated quantity being four million five hundred thousand feet, board measure. The contract provided that the ties should comply with the government specifications; all to be eight feet six inches in length; sixty per centum or more to be seven inches by nine inches in size, and not more than forty per centum to be seven inches by eight inches; not less than eighty per centum to be of the grade known as U. B. or "heart ties," and not to exceed twenty per centum to be of the grade known as T. B. or "sap ties." The ties were to be subject to inspection by the United States Railway Administration inspectors at the time of loading. The ties of different dimensions were to be kept separate and the sap ties kept separate from the heart ties.

Some few days prior to the time the contract was entered into, the president of the appellant company called the manager of the respondent by telephone and inquired whether his company had any cuttings which he could place with the appellants—by "cuttings" (it is explained) meaning dimension timbers. The manager answered that his company then had no orders for timbers such as he mentioned, but expected one in a few days and would then communicate with him further. After entering into the contract, the manager of the respondent called the president of the appellant and informed him of the contract and inquired whether his company would desire to fill a part of the order, and received an affirmative answer. He then informed

the person with whom he was speaking that the chief inspector for the railway administration would be at the respondent's mill within a few days, that he would inform him of the time of the inspector's arrival, and that it would perhaps be better for him to come over at that time and see the inspector, who would explain to him the kind of tie that the administration desired. On the arrival of the inspector, the respondent was notified, and its president came over and interviewed him. As a result of this visit the respondent company placed with the appellant company an order for nine hundred thousand feet of ties, board measure, to be delivered on scows alongside a vessel at the respondent's dock. The order included all of the stipulations contained in the respondent's contract with Chas. R. McCormick & Company, as to sizes, lengths and grades, together with the stipulation that the ties were subject to inspection by the United States Railway Administration inspectors, and the requirement that the different sizes and grades must be kept separate. It was provided that delivery should be made at the rate of three hundred thousand feet per month during the months of May, June, and July, of 1919.

A government vessel reached the respondent's mill for a load of ties in the latter part of May, 1919. At this time the appellant sent to the vessel a scow load of ties containing two hundred and eleven thousand two hundred and ninety-nine feet. Of this quantity the inspectors accepted, and there was loaded on the vessel, one hundred sixty-two thousand and seventy-eight feet, board measure, the balance, save one hundred and sixty-four in number containing seven thousand three hundred and eighteen feet, being returned to the appellant.

The appellant refused on demand to make any fur-

ther deliveries of ties, and the respondent instituted the present action to recover as for a breach of the contract. In its complaint it sets forth the contract, its breach, and alleged that because of the breach it was necessary for it to procure other ties to fill its contract, and thereby suffered a loss in the sum of four thousand four hundred twenty-seven dollars and fifty-three cents. Issue was taken on the complaint and a trial had before the court sitting without a jury. The trial court found the issues in favor of the respondent, and entered a judgment in its favor in the sum of three thousand nine hundred eight and eighty-five hundredths dollars. From this judgment the present appeal is prosecuted.

In this court the appellant makes four principal contentions; first, that the contract was conditional rather than absolute, the condition being that the appellant accepted the order to be filled only in so far as it could cut ties at its mill from logs suitable for that purpose, averring that for the first delivery it did cut all that were so suitable; second, that, the respondent committed a breach of the contract by failing to accept ties tendered it which complied strictly with the contract, thereby committing such a breach of the contract as to excuse the appellant from further performance; third, that, assuming there was no breach of the contract on the respondent's part and that there was a breach thereof on the part of the appellant, the respondent introduced no competent proof of damages; and fourth, that, assuming that respondent is entitled to recover as for a breach of the contract, the amount of the recovery is excessive.

On the first of these contentions the evidence is in irreconcilable conflict. If the evidence on the part of the respondent is to be believed, there was a contract

to fill the order given in accordance with its terms un-restricted by either condition or reservation, while the evidence of the appellant, if it is to be believed, shows only a conditional acceptance of the contract. Aside from the written order this evidence was oral, and we are unable to say that it preponderates against the findings of the trial court, as we must do to direct a re-versal for this reason. On the contrary, the record convinces us that the trial court found upon the ques-tion in accordance with the weight of the evidence.

The record on the second question is more compli-cated. As we have said, there was a loss of one hun-dred and sixty-four of the ties, and it is sufficiently proven that certain of the ties sent back complied with the specifications of the contract. While this under other circumstances might constitute such a breach as to excuse further performance of the contract, we are satisfied that the trial court correctly found that it did not do so in this instance. The fault lay with the appellant. Many of the ties did not comply with the specifications. Some were nine feet in length instead of eight feet six inches, some had more wane than the government specifications permitted, some were sawed from unsound timber, some contained too much bark, some were irregularly sawed, some cut for the dimen-sions of seven by nine inches were undersized and had to be classed as of the dimensions seven by eight inches, and some classed as heart ties had on them too much sap to pass the inspection as being of that class. These were all intermixed on the barge, and when the steve-dores who were employed by the owners of the vessel to load the ties on the vessel began to load from the barge there were so many rejections that great con-fusion soon existed, so much so that the stevedores after a time refused to handle more of them. In the meantime a number of the rejected ties had been

thrown overboard by the stevedores and others had been swept overboard by the operation of the ships tackle. The lost ties were from the number thus thrown and swept overboard, and the ties conforming with the specifications were ties remaining on the scow after the stevedores had refused to load more of them on the vessel. The appellant, while only required by its contract to make delivery at the ships tackle, was required to make delivery with the different grades and dimensions of the ties segregated. The purpose of this was to facilitate loading from the scow to the ship and to prevent the very confusion and trouble which occurred in this instance. As we say, the appellant was in fault in this, and it cannot claim a breach of the contract on the respondent's part because of loss of ties and the refusal of the government inspector to accept satisfactory ties, when the loss and refusal is the direct result of its own breach of the contract.

As proof of the amount of its damages the respondent showed that there were recognized standard grades of ties for both export and domestic trade, that ties cut in accordance with the government specifications were superior in quality to these standard grades and would not only be readily but gladly accepted by purchasers of standard grades as complying with such standards, and showed further that the market price of the standard grades was greater at the time the ties were to be delivered than the price at which the appellant agreed to deliver them. The appellant contends that this was to apply a measure not warranted by the governing rules for the measurement of damages; that since it was not shown that the special tie had an established market value as such at the place of delivery, its market value should have been ascertained by ascertaining the market value of such a tie in the nearest available market and deducting therefrom the cost of transpor-

tation to such market.   But we think this contention
mistakes the effect of the proofs.   It seems to us that,
if recognized standard ties had a market value at the
place these ties were agreed to be delivered, and that
these ties had the value of standard ties and could be
disposed of as such, they at least had the market value
of standard ties.   In other words, while the proofs may
not show that the ties had a market value as a special
class of ties at the place of delivery, they do show that
they had a market value at that place as standard ties.
Having such a value, the respondent was clearly en-
titled to resort to it as one of the elements by which to
measure its loss caused by the breach of the contract.

The respondent contracted to sell the ties to Chas.
R. McCormick & Company at twenty dollars per thou-
sand feet, board measure, for heart ties, and nineteen
dollars per thousand feet, board measure, for sap ties.
It made the same price to the appellant less two per
centum.   The proofs of the respondent showed that the
market price for ties of this class at the time the con-
tract called for delivery was twenty-seven dollars per
thousand feet for heart ties and twenty-five dollars
per thousand feet for sap ties.   The trial court so
found, and its judgment was made up from calcula-
tions based on these values.   The claim of the appel-
lant that the assessment of damages is excessive is
based on evidence introduced by it to the effect that
the difference between the contract price and the mar-
ket value was less than the court found it to be.   But
here again the trial judge was forced to draw a con-
clusion from conflicting evidence, and our reading of
the evidence does not convince us that its preponder-
ance is against his conclusion.

The judgment is affirmed.

PARKER, C. J., BRIDGES, MACKINTOSH, and HOLCOMB,
JJ., concur.