## Insurance Company of North America, et al. v. Cheathem.

(Decided November 1, 1927.)

### Appeal from Webster Circuit Court.

1. Courts.—Language used in opinion which was not necessary to decision is not binding on Court of Appeals.

2. Mortgages.—Under Civil Code of Practice, section 375, which forbids foreclosure of mortgage, remedy of mortgagee is to enforce his lien in court of competent jurisdiction.

3. Insurance.—If language of policy is ambiguous and susceptible of more than one construction, it should be construed most strongly against insurer who prepared it.

4. Mortgages.—Term "foreclosure" is used to mean institution of suit to enforce lien against property, notwithstanding Civil Code of Practice, section 375, abolishing foreclosures.

5. Insurance.—Under fire policy providing that policy shall be void, if "foreclosure" proceedings are commenced against property covered, institution of suit to foreclose lien against property with knowledge of insured is a foreclosure proceeding forfeiting policy.

6. Insurance.—Under loss payable clause attached to fire policy making loss payable to mortgagee as its interest might appear, and providing that mortgagee's rights were subject to all terms of policy, any act of mortgagor forfeiting interest would also forfeit interest of mortgagee.

7. Insurance.—Under fire policy providing that policy shall be void, if, with knowledge of insured, foreclosure proceedings be commenced against property covered, act of assignee of mortgagee in starting foreclosure proceedings in violation of policy rendered policy void, unless insurer estopped itself from relying on such provision of policy.

F. M. DRAKE for appellants.

J. C. CANNADAY for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

Appellants entered into an insurance contract with appellee Shelley Cheathem, whereby, in consideration of a premium then paid, it agreed to insure one dwelling house against loss by fire to the extent of $1,200, and household goods in the dwelling house to the extent of $400. The policy contract went into effect on the 4th day of September, 1922, and was to continue until the 4th day of September, 1925. The dwelling house and the household goods therein were totally destroyed by fire in June, 1925.

In January, 1924, the appellee Cheathem executed a mortgage to the Providence Motor Compay covering the property described in the policy. On January 23, 1924, the appellants attached a "loss payable clause" rider to the policy, consenting that in case of loss the amount of the mortgage should be paid to the Providence Motor Company. This mortgage was thereafter assigned to the appellee Union National Bank, which was the owner thereof at the time of the destruction of the property by fire. The loss was not paid by appellants and suit was instituted by the appellee Cheathem, who joined the Union National Bank as plaintiff.

The appellants filed an answer, relying on a provision in the contract rendering the policy void, if foreclosure proceedings should be commenced or notice be given of sale of any property covered by the policy by virtue of any mortgage or trust deed. The provision is as follows:

> "The entire policy, unless otherwise provided by agreement indorsed thereon or added thereto, shall be void  .  .  .   if, with the knowledge of the insured, foreclosure proceedings be commenced or notice be given of sale of any property covered by this policy by virtue of any mortgage or trust deed."

A general demurrer was filed to the answer and sustained by the court. Appellants excepted to the ruling of the court in sustaining the demurrer and declined to plead further. Whereupon judgment was entered against them for the full amount of the policy.

In their original brief appellants present the argument that conditions subsequent in an insurance contract

are enforceable, and that violation of such provisions works a forfeiture ipso facto without regard to materiality or whether they affect the risk. The case of Niagra Fire Insurance Co. v. Mullins, 218 Ky. 473, 291 S. W. 760, is cited as one of the later cases so holding. The rule is as stated in that case, but the question before us in this case is whether such a condition in the policy was violated. They rely on the case of Orient Insurance Co. v. Burrus, 63 S. W. 453, 23 Ky. Law Rep. 656, as supporting their contention that the provision in the policy quoted above is valid. In that case the facts disclosed that the policy was issued after suit had been instituted to enforce a vendor's lien. This court in that case held that the provision above quoted could not be made to apply to proceedings instituted before the policy was issued. The court took occasion to say that the terms of the policy would ordinarily mean that, if proceedings were begun after its issual, with the knowledge of assured, it would render the policy void. The court did not intend to hold in that case, as we view it, that the institution of such proceedings would render the policy void, but rather was referring to the language of the provision in the policy itself and the proceedings mentioned therein. The proceedings referred to in the provision of the policy is "foreclosure" proceedings, and if such a proceeding had been instituted prior to the issual of the policy, then the insurance company could not rely on that clause of the policy. If the language used by the court in that case is susceptible of any other construction, it was not necessary to a decision in that case, and is therefore not binding on the court.

The case of Hendrix v. National Union Fire Insurance Co. of Pennsylvania, 205 Ky. 283, 265 S. W. 795, is also cited by appellants. The question for decision in that case was whether there had been a change of ownership or interest in the property after the policy was issued. The court incidentally referred to the provision in the policy relating to "foreclosure" proceedings and stated that such stipulations and provisions are uniformly upheld. That is true, but the court did not, in that case, undertake to determine whether the mere institution of a suit for the enforcement of a lien against the property mentioned was a foreclosure proceeding within the meaning of the policy provision. These are

the only two cases cited by appellants in their original brief.

Appellees in their original brief rely on section 375, Civil Code, which forbids the foreclosure of a mortgage, and cite Speagle v. Dwelling House Insurance Co., 97 Ky. 646, 31 S. W. 282, 17 Ky. Law Rep. 610. In that case two defenses were urged by the insurance company: One that the buildings insured had become vacant and unoccupied; and the other that a statement had been filed in the clerk's office by materialmen, whereby a lien on the property insured was created in their favor. There is nothing in the opinion to indicate that any proceedings had been instituted to enforce the lien given by the statute. It must have been urged in that case that the filing of the statement for the purpose of obtaining a statutory lien was the commencement of foreclosure proceedings. The court said:

"In the clause quoted it is provided that, 'if foreclosure proceedings shall be commenced,' the policy is to become void. But no such proceedings can be had under our system of practice, and, manifestly, the language used was not intended to apply to enforcement of a statutory lien like the one under consideration. Nor is there any language in the contract that shows at all satisfactorily the parties intended the policy to be void in case the lumbermen and builders asserted and enforced their lien. For the company not only knew, but it is recited in the policy, the buildings insured were then under way of construction, and privilege was given to the insured to complete them. And as the lumbermen and builders, in express language of the statute, already had a lien, which could not be defeated, it is plain, or at least the contract cannot be fairly so construed as to justify the conclusion, either existence or enforcement of that lien was intended to render the policy void."

The language of the court would indicate that the provision in the policy rendering it void, "if foreclosure shall be commenced," was not valid, because no such proceedings can be had under our system of practice. It does not seem to us that it was necessary for the court to determine that particular point in that case any more than it was called upon to determine the point in the Burrus case, supra.

Counsel for appellees cite Aultman & Taylor Co. v. Meade, 121 Ky. 241, 89 S. W. 137, 28 Ky. Law Rep. 208, 123 Am. St. Rep. 193, as supporting the contention that it is forbidden to foreclose a mortgage, and that the remedy of the mortgagee is to enforce his lien in a court of competent jurisdiction. That case so holds, and it is the correct construction of section 375, Civil Code.

Appellees contend that, if the language of the policy is ambiguous and susceptible of more than one construction, it should be construed most strongly against the insurer who prepared it. That is the correct rule of law. 26 C. J. 73. Niagara Insurance Co. of New York v. Jeffrey, 215 Ky. 644, 286 S. W. 846; 14 R. C. L. 1115.

We are confronted with the question as to whether the institution of a suit to enforce a mortgage lien is a "foreclosure proceeding" within the meaning of the provision or stipulation of the policy. In considering this question we are without any precedent in Kentucky. Foreclosures were abolished by what is now section 375 of the Civil Code, but, notwithstanding this provision of the Code, "foreclosure" has been used by the textwriters and by this court with but one meaning in mind, and that meaning is the institution of a suit to enforce a lien against property. If the word has a meaning commonly understood in present day language separate from the old meaning of the word, we must determine whether the provision, which is carried in nearly all insurance policies rendering them void, if foreclosure proceedings shall be commenced, is used in its modern or its ancient sense. If the word is used in its ancient sense, then the provision in a policy in Kentucky is entirely meaningless, because there is no such thing as foreclosure in the ancient sense known to the laws of Kentucky. In its ancient meaning it was a proceeding by which a mortgagor's equity was absolutely taken away from him. The mortgagee in a foreclosure proceeding took over the property covered by the mortgage in satisfaction of the debt without any right of redemption in the mortgagor. By the very terms of the contract the mortgagee could possess himself of the property as the title was vested in him and it was only necessary for him to put the mortgagor out of possession and end every right that he had to the property. This character of foreclosure was an early development of the common law. The courts and the textwriters refer to foreclosure now as "strict" foreclosure,

which was the ancient meaning, and "equitable" foreclosure, which is the modern meaning. The use of the word is probably more prevalent today than it has ever been in the history of jurisprudence. It is generally and uniformly understood in modern times as a proceeding whereby a lien is enforced and property is sold through a proceeding in court to satisfy a debt. In the olden days the mortgagee took possession of the property when the mortgagor defaulted in the payment of his debt. Courts of equity then took notice of the matter, and, in an effort to protect the rights of the mortgagor established the doctrine of redemption. This gave some relief to the mortgagor, but it left the mortgagee in a state where he did not know his rights, as no time was prescribed in which he might recover his property by redemption. Through a progressive development courts of equity allowed redemption under certain conditions within a definite time, and eventually these methods of foreclosure found their way into the statutes in nearly all, if not all, of the states of the Union. The ancient method of foreclosure was abolished by statute. It appears that Kentucky abolished the ancient mode of foreclosure more than 100 years ago. A history of the modern doctrine of foreclosure proceedings is briefly summarized in 9 Encyclopedia of Pleading and Practice, pp. 122, 127, 128, 129. For a discussion and definition of modern foreclosure, we refer to 13 American and English Encyclopedia of Law (2d Ed.) pp. 779, 780; 19 R. C. L. 517; Pomeroy's Equity Jurisprudence (3d Ed.) 2456; Jones on Mortgages (7th Ed.) pp. 962, 963; Tiedman on Real Property (2d Ed.) section 358; 1 Whitehouse on Equity Practice, p. 714; 41 C. J. pp. 830-839. An examination of these authorities and the many cases cited in support thereof shows beyond all doubt that the word "foreclosure" has a modern meaning, and the meaning is an equitable proceeding for the enforcement of a lien against property in satisfaction of a debt.

Jones on Mortgages (7th Ed.) p. 34, stating the procedure in Kentucky for the enforcement of liens, states that the mortgagor is the real owner of the mortgaged property until foreclosure, and the foreclosure is made under the jurisdiction of a court of equity. The author notes that "strict" foreclosure is forbidden by the Code of Kentucky. Newman on Pleading and Practice refers to proceedings to enforce a mortgage lien as foreclosure proceedings (section 184—F.) The opinions

of this court are full of references to foreclosure proceedings, and in each instance the reference is to a suit in equity for the enforcement of a lien against property to satisfy a debt.

14 R. C. L., par. 306, p. 1128, contains this text:

> "The usual provision that the policy shall be void, if, with the knowledge of the insured, foreclosure proceedings be commenced against the subject of insurance, means the institution of suit or judicial proceedings for the enforcement of the mortgage, and waiver of legal delays, or other waiver of a nature to facilitate and expedite legal proceedings when begun, and does not of itself constitute the institution of judicial proceedings."

Further in the same paragraph we find this statement:

> "Foreclosure is commenced when a petition is served on the insured, or the filing of the petition in some jurisdictions, or on the advertisement of mortgaged property for sale, as provided by the mortgage."

19 R. C. L. 517 contains this statement:

> "The phrases 'foreclosure of a mortgage' and 'equity of redemption' were imported here from England along with the body of the common law, and are yet in constant use; but it must always be remembered, in order to avoid being misled, that they have acquired a totally different meaning here from that which they originally bore."

We are forced to the conclusion that the provision in the policy rendering it void, if foreclosure proceedings should be commenced, meant that, if there should be the institution of a suit to foreclose a lien against the property with the knowledge of the insured, the policy would be forfeited. The question as to whether or not the insurer would be estopped if it also had knowledge of the institution of such a suit, and did not take steps to cancel the policy, is not before us and, for that reason, is not determined.

It is argued by counsel for appellees that appellants consented to the placing of the mortgage on the property, and attached thereto a loss payable clause, and, for that reason, the commencement of foreclosure proceedings

having for their object the enforcement of the lien did not forfeit the policy. On this point he is supported by the text found in 26 C. J. 239, which is as follows:

> "But, where insurer consents to an existing mortgage, a judgment of foreclosure will not forfeit the policy, although it prohibits the institution of foreclosure proceedings."

This quotation was recently considered by the Supreme Court of Kansas in the case of Hole v. National Fire Insurance Co. of Hartford, Conn., 252 p. 263. That court found that the text was not supported by the authority cited. That authority is Fitzgibbons v. Insurance Company, 126 Iowa 52, 101 N. W. 454, 70 L. R. A. 243, and an analysis of that opinion, as made by the Kansas Supreme Court, is convincing that it does not support the text. The Kansas Supreme Court in that case discussed a provision for forfeiture on commencement of foreclosure proceedings in an insurance policy, and there said:

> "The reason for a provision for forfeiture on commencement of foreclosure is increase of hazard. Experience has taught insurance companies that, when property owners become financially unable to take care of their secured obligations, or are so neglectful of them that foreclosure must be resorted to, likelihood of fire becomes greater. Under conditions otherwise satisfactory, insurance on property, covered by mortgage in good standing, is as safe as insurance on unincumbered property. Insurance on property covered by mortgage in default and in process of foreclosure involves greater risk. If, with knowledge of all the facts, an insurer does issue a policy on property covered by an overdue mortgage on which foreclosure may be commenced at once, and makes loss payable to the mortgagee, it is possible to say the provision for forfeiture on commencement of foreclosure was not intended to apply. Butz v. Ohio Farmers' Ins. Co., 76 Mich. 263, 42 N. W. 1119, 15 Am. St. Rep. 316. Consent to insure under safe conditions, however, does not include or imply consent to carry the risk under conditions which have become hazardous, and, if consent of the latter kind be negatived by a provision that the policy shall become void on commencement

of foreclosure, the provision becomes operative when the condition creating the hazard occurs.''

14 R. C. L., par. 264, p. 1084, contains this text:

"A clause in a policy merely making the loss payable to a mortgagee as his interest may appear makes the mortgagee the simple appointee of the mortgagor, to receive the proceeds of the amount of his interest, and to place his indemnity at the risk of every act and omission of the mortgagor that would avoid, terminate, or affect the insurance of the latter's interest under the terms of the policy.''

The loss payable clause which was attached to the policy in this suit simply made the loss payable to the mortgagee as its interest might appear, with the futher provision that its rights were subject to all the terms and conditions of the policy. Under such a loss payable clause any act of the mortgagor that forfeits his interest would also forfeit the interest of the mortgagee. The holder of the mortgage, the appellee, Union National Bank, itself started the foreclosure proceedings, and in doing so it initiated the act which violated the provision in the policy against foreclosure proceedings, and thereby rendered the policy void, unless, perchance, it may be that appellants, by some act of theirs, estopped themselves from relying on that provision of the policy. As a demurrer was sustained to their answer, no reply was filed, and we do not know whether appellees have any plea in avoidance of the forfeiture which might be available to them.

Judgment is reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.

Judge Clay dissenting.

### DISSENTING OPINION BY CHIEF JUSTICE CLAY.

Forfeitures of insurance policies are not favored, and not only will a provision voiding the policy be strictly construed, but, where susceptible of two constructions, one sustaining the forfeiture, and the other denying it, the latter will be adopted for the benefit of the insured. Standard Accident Insurance Co. v. Patton, 202 Ky. 566, 260 S. W. 371; Queen Insurance Company of America v. Cummins, 216 Ky. 329, 287 S. W. 896;

Inter-Southern Life Insurance Co. v. Duff, 184 Ky. 227, 211 S. W. 738. The majority opinion concedes that the word "foreclosure" is sometimes used in the sense of strict foreclosure and sometimes in the sense of the enforcement of a lien. The former is the narrow or strict meaning, while the latter is the broad or liberal meaning. In adopting the latter construction the court has ignored the well-established rule that such a provision must be strictly construed, and has announced the new rule that a forfeiture provision must be liberally construed for the benefit of the insurer. As this is a radical departure from established principles, I feel impelled to dissent.