# Hartford Fire Insurance Company v. Bryan et al.

(Decided March 22, 1932.)

(As Modified on Denial of Rehearing June 14, 1932.)

J. T. GOOCH and B. N. GORDON for appellant.

C. J. WADDILL and GORDON, GORDON & MOORE for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The appellant issued a five-year installment policy of insurance for $800 on a farm house, $200 on a barn, and $200 on household furniture owned by the appellee Bud Bryan. At the time there was a vendor's lien on the real estate to secure an indebtedness of $1,200 owing his co-appellees, S. R. Parker and J. L. Hancock, which was later assigned to the Kentucky Bank & Trust Company. Stamped on the policy when issued was the following indorsement: "Subject to all the conditions of this policy, loss if any hereunder on buildings only payable to S. R. Parker and J. L. Hancock, mortgagees, as their interest may appear."

It was provided in the policy:

"If suit is commenced in any court of competent jurisdiction to collect any mortgage lien or any other incumbrance on the property covered by this policy . . . then . . . this policy shall be null and void."

The agent of the insurance company knew the note secured by the lien matured on October 21, 1927. A payment of an installment of premium was accepted on December 1, 1927, which carried the policy to November 6, 1928. On April 16, 1928, the holder of the note brought suit to enforce its lien and process was served on Bryan on April 23. On April 30, 1928, the property was destroyed by fire.

The company in defense relied upon the foregoing provision in the policy. The trial court to whom the case was submitted on the law and facts was of the opinion that the acceptance of the installment or premium was in effect a new contract made with the knowledge that the lien note was overdue and unpaid, and that thereby the company had consented to renew or continue the risk notwithstanding the forfeiture provision. While the agent knew of the date of the note, there is no evidence tending to show that he or any other agent knew it was unpaid when the premium was accepted. The conclusion of the court was doubtless reached under the rule of law that where one has information imposing a duty upon him to look further, there is imputed knowledge of all facts which an investigation would have disclosed.

The opinion of the court is vigorously assailed. If his interpretation of the policy is correct, his conclusion of nonapplicability of the clause is supported by Orient Insurance Co. v. Burrus, 63 S. W. 453, 23 Ky. Law Rep. 656; Svea Fire & Life Insurance Company v. Foxwell, 234 Ky. 95, 27 S. W. (2d) 675; Springfield Fire & Marine Insurance Co. v. Blevins, 234 Ky. 13, 27 S. W. (2d) 699; Butz v. Ohio Farmers' Insurance Co., 76 Mich. 263, 42 N. W. 1119, 15 Am. St. Rep. 316; and other cases digested in Annotations, 50 A. L. R. 1121. Without considering its soundness in its entirety, it seems to us that the liability of the company should be enforced upon another ground.

While there may be little difference in the effect, the policy provision with which we have to deal is different

in terms from others heretofore considered, which refer to the commencement of "forclosure proceedings." Here it is "if suit is commenced . . . to collect any mortgage lien or other encumbrance." These stipulations are recognized as valid in themselves because of the increased moral risk imposed. 5 Couch, Cyc. of Ins. Law, sec. 1215 et seq.; 14 R. C. L. 1126; Insurance Co. of North America v. Cheathem, 221 Ky. 668, 299 S. W. 545.

The loss-payable clause to a mortgagee may or may not constitute an independent contract with him. Many policies contain what is called a "standard clause" or "union clause," which in effect stipulates that the mortgagee's interest shall not be invalidated or affected by an act or breach of condition by the mortgagor or owner. Others, like the one now before us, do not contain such a provision, but do contain what is called an "open-mortgage clause," and under the indorsement of a loss-payable provision the mortgagee is regarded simply as the appointee of the insured owner, and the effect is merely to direct payment of the proceeds according to his interests. So that all express stipulations and all the conditions of the policy are applicable to the mortgagee. No different or additional legal burden is placed on the insurer by virtue of the loss-payable clause. The mortgagee's indemnity is at the risk of every act and omission of the mortgagor; his right is no greater, and the owner's breach of a condition of the policy which prevents a recovery by him also precludes a recovery by the mortgagee. 14 R. C. L. 1037; 5 Couch, Cyc. of Ins. Law, sec. 1215a; Hill v. International Indemnity Co., 116 Kan. 109, 225 P. 1056, 3 A. L. R. 363; Hole v. National Fire Insurance Co., 122 Kan. 328, 252 P. 263, 50 A. L. R. 1113. Although the benefit, in whole or in part, inures to the mortgagee, the property remains that of the mortgagor as owner, and there is no insurance of the mortgagee's equitable interest therein. McKinney v. Western Assurance Co., 97 Ky. 474, 30 S. W. 1004, 17 Ky. Law Rep. 325.

Although there is practical unanimity in respect to the general rules of construction stated, when we come to consider the application of the "open-mortgage" clauses in connection with the policy, there is a conflict in the decisions. Its origin would seem to be in the difference between a literal and a liberal rule of construction of an insurance contract, or, in some instances, in a strict or lenient application of the doctrine of forfeitures.

Smith v. Germania Fire Ins. Co., 102 Or. 569, 202 P. 1088, 19 A. L. R. 1444. This court has consistently applied the rule of a very liberal construction in favor of the person insured, and its abhorrence of forfeitures is prosaic. The case at bar must be decided under the control of that attitude, and if possible the terms of the contract must be construed so as to render it valid and efficient to afford the insured the indemnity contemplated thereunder rather than so as to render it nugatory and useless.

The commencement of proceedings to enforce a lien is not expressly or impliedly prohibited by the mortgage or loss-payable clause. And, since its plain purpose was to recognize the interest of the holder of the lien, the forfeiture clause must be regarded as inapplicable to the specified mortgagee, and the beginning of proceedings by him to effect the collection of his debt maturing during the policy period must have been presupposed. The insurance company knew that the note would become due more than four years before the expiration of the policy and must have known when attaching the loss-payable clause at the very inception of the policy that it might become necessary for the holder of the lien to protect himself by suit, and it well knew that this would not have a tendency to diminish his interest in the property but rather to increase it. There is a seeming inconsistency in indirectly protecting the mortgagee against loss and at the same time contracting that his protection should be destroyed or avoided by merely commencing a suit to enforce his equitable rights in the property. The very purpose and object in attaching the mortgage clause was to add security to his note and his lien. The agreement and consent to the appointment of the mortgagee as a beneficiary must have been made in contemplation of a proceeding to enforce his rights upon maturity of his obligation if it be not satisfied. Otherwise, we have an anomalous situation where one party to a contract, the mortgagee, could not enforce his rights against another, the mortgagor, without losing the security or right of indemnity which was given by a third party, the insurer, to both of them. There is no provision in the policy before us for obtaining the previous consent of the company to bring the suit.

A provision avoiding liability on this ground is of a class different from others, such as for a willful destruction of the property or the breach of a promissory

warranty or condition subsequent not to vacate the property or place other insurance on it, for it could not be said that such were in the contemplation of the parties but rather were not to be expected.

The conclusion that under the circumstances of the case the mere commencement of suit by a mortgagee whose rights are recognized without its consummation was not within the contemplation of the purposes of the contract finds support in principle in those cases where the policy was issued or loss-payable clause added after maturity of the note or suit had been begun. Orient Insurance Co. v. Burrus, supra, 63 S. W. 453, 23 Ky. Law Rep. 656; Springfield F. & M. Ins. Co. v. Blevins, supra; Stebbins v Westchester Fire Ins. Co., 115 Wash. 623, 197 P. 913; Butz v. Ohio Farmers' Ins. Co., supra; Annotations, 19 A. L. R. 1449, 50 A. L. R. 1121. Alike in principle is Speagle v Dwelling House Insurance Co., 97 Ky. 646, 31 S. W. 282, 17 Ky. Law Rep. 610, where it was held that a materialmen's statutory lien arising after issuance of the policy on a building under construction was within the contemplation of the parties and rendered inapplicable a provision that the policy should be void "if foreclosure proceedings shall be commenced" as it related to the materialmen's lien.

In Christenson v. Fidelity Ins. Co., 117 Iowa, 77, 90 N. W. 495, 496, 94 Am. St. Rep. 286, applying the rule of strict construction against the insurer to a similar policy and loss-payable clause, it was held, notwithstanding the conceded weight of authority that such clause does not constitute an independent contract and is no more than a stipulation to pay so much of the proceeds as shall be required to satisfy the mortgage, that:

> "It may not be an interest in the policy resulting from any contract between the company and the mortgagee. But this was not necessary, as the insured and the company could create an interest in favor of a third party without his participation, or even knowledge. If they contracted that the mortgagee, in event of a loss, should have the proceeds derived from the policy—as they did—then the right thereto is certainly an interest under, if not technically in, the policy. The mortgagee certainly had an interest in the property insured, and the purpose of this provision seems to have been to afford him the same protection secured under the so-called 'union mortgage clause.'"

In Rostetter v. Am. Ins. Co., 184 Ill. App. 157, under terms of a policy like the one at bar, except that consent might be given by the company to the commencement of a foreclosure proceeding without invalidating it, and under conditions similar to those before us, it was held that by adding the mortgage loss-payable clause to the policy the company rendered inoperative the condition therein against the foreclosure of mortgages, so far as the mortgagee was concerned. The opinion cites in its support German Insurance Co. of Freeport v. Churchill, 26 Ill. App. 206; and Getman v. Guardian Fire Insurance Co., 46 Ill. App. 489.

In Michigan State Insurance Co. v. Lewis, 80 Mich. 41, fire destroyed the property after mortgage foreclosure proceedings had been begun. Judge Cooley, that much respected and eminent judicial authority, stating the opinion of the Supreme Court of Michigan, said:

"It only remains to be seen whether the institution of the foreclosure proceeding, of itself, and irrespective of any delay whatever in giving notice [to the insurance company], relieved the company from further liability. . . . But we are all of the opinion that where insurance is taken upon mortgaged property, and the insurer is notified of the mortgage, and, of course, understands that proceedings may at any time be taken to foreclose it when the mortgage is over due, as seems to have been the case when this insurance was taken, it would be a most unreasonable and unjust construction of such a provision to hold that, by the mere commencement of foreclosure proceedings, the policy would be annulled. . . . We cannot suppose the insured in this case understood that his contract was liable to be terminated on the very day it was made, by the act of a third party in beginning the foreclosure of a mortgage of which the insurers were fully advised, and subject to which they had accepted the risk."

In the course of that opinion reference is made to the form of the policy and its general conditions, and it is said:

"The condition appears in a printed form of policy made use of by the company, and probably designed to be sufficiently general in its conditions to answer in all cases. Such a general form cannot be supposed to have had special and exceptional

cases particularly in view, and it is therefore more likely to suggest troublesome questions of construction than a contract specially prepared for the case.''

See, also, as supporting the conclusion reached, Westchester Fire Insurance Co. v. Coverdale, 48 Kan. 446, 29 P. 682; Citizens' State Bank v. Shawnee Fire Insurance Co., 91 Kan. 18, 137 P. 78, 49 L. R. A. (N. S.) 972; Jones v. Phoenix Ins. Co., 94 Kan. 235, 146 P. 354; Baker v. Liverpool & London & Globe Ins. Co. (Tex. Civ. App.), 275 S. W. 316.

Of course, the situation is not to be confused with one like that appearing in McKinney v. Western Assurance Co., supra, where there was a consummation of the foreclosure suit, and the title of the owner had been divested and acquired by the mortgagee as purchaser at a decretal sale before loss occurred, for his rights under the policy as mortgagee had terminated, as had also the property rights of the original owner and insured.

The case of Insurance Company of North America v. Cheathem, 221 Ky. 66, 299 S. W. 545, treats a policy provision and conditions very similar to the present ones. Upon a reconsideration of the subject, we conclude that in so far as that decision might be applied to the present facts and to the extent that it is inconsistent with this opinion it should be and is overruled.

It is argued that error was committed in adjudging liability for loss of the barn since the evidence conclusively showed that the barn was not destroyed. The petition alleges the loss of the dwelling, contents, and barn. The answer admits all of the property described in the policy was partially destroyed, but denies any of it was totally destroyed. It was stipulated that if Bryan, the plaintiff and owner, were present, he would testify, among other things, that the barn had been totally destroyed by fire. Parker, one of the mortgagees, stated it did not burn. The trial judge in his findings of fact stated it was destroyed, and the judgment was so entered. Under the record we would not be justified in setting aside the jugment in whole or in part upon the ground of error in that regard. If as a matter of fact the barn was not destroyed, adjustment should be made as is indicated in appellee's brief.

The judgment is affirmed.

Whole court sitting.