SAMUEL P. HARRINGTON *vs.* FITCHBURG MUTUAL FIRE INSURANCE COMPANY.

Worcester. Oct. 4, 1876; Oct. 15, 1877. — March 5, 1878.

A building described as a "ten tenement frame block" is not "unoccupied," within the meaning of a clause in a policy of insurance against fire, which provides that the policy shall be void whenever the building shall be unoccupied, if two of the tenements are in actual use and occupation as residences.

If a person honestly and in good faith applies for insurance upon property, all the facts and circumstances affecting which he fully discloses, as well as the amount of existing insurance thereon, and also in good faith puts a value on the property, the existing insurance and that applied for being less than three fourths of such value, and the insurance company with such knowledge issues a policy consenting to insurance to three fourths the value, the fact that it subsequently appears that the real value of the property was at the time less than the assured believed it to be will not avoid the policy.

A mortgagee, to whom a policy of fire insurance is made payable in case of loss, is not bound by an adjustment of such a loss made without his knowledge or consent by the assured, the mortgagor, with the insurance company.

CONTRACT upon a policy of insurance, dated November 1, 1875, by which the defendant insured Patrick Johnson for the term of one year from November 1, 1875, in the sum of $3000, "on his ten tenement frame block," "payable in case of loss to Samuel P. Harrington, mortgagee, as his interest may appear."

The policy contained the following printed provisions: "Consent to insure to ¾ the value," "whenever a building hereby insured shall be unoccupied;" "or if, without the consent of the company, expressed in this policy, the assured shall now have, or shall hereafter make, any other contract of insurance against loss by fire on the property, or any part thereof hereby insured,

whether such other contract shall be valid or not against the parties thereto, or either of them," "this policy shall be void." "In case of any other contract of insurance upon the property hereby insured, whether such contract be valid or not, as against the parties thereto, or either of them, the assured shall not, in case of damage, be entitled to recover of this company any greater portion of the loss or damage sustained than the amount hereby insured shall bear to the whole amount insured on the property, nor more than a like proportion of three fourths of the actual value of the property insured at the time of the loss or damage." Writ dated March 23, 1878.

Trial in this court, before *Devens*, J., who reported the case for the consideration of the full court upon the following facts:

In November, 1872, an application in writing was made to the defendant for insurance to the amount of $3000, on the property described in the above policy, valued at $9000, for the term of three years, by William Bliss, describing himself as the owner of the property. The application set forth the location of the property; described it as a "ten tenement frame block," occupied by "ten tenants as residences only;" and stated that it was "mortgaged to Samuel P. Harrington, payable to same to extent of mortgage claim." Opposite the printed words: "Other insurance. If any, at what office, and how much," was written, "Other insurance permitted."

On November 8, 1875, Patrick Johnson made application to the defendant for insurance on the same property, to the amount of $3000, with the same valuation, for the term of three years. The application stated that the applicant was owner of the property; that it was mortgaged for $4000 to Samuel P. Harrington, policy to be payable to him; and that it was insured for $3000 in the "Old Mutual, Worcester." Opposite the printed headings relating to the situation of the property, the description and occupancy of the buildings, was written the word "renewal." It was agreed that this word referred to the former application by Bliss. The policy in suit was issued on the above application of Johnson.

The house was partially destroyed by fire on December 18, 1875. The plaintiff, at the time of the insurance and of bringing the writ, held a mortgage on the property insured for the

sum of $4000. At the time the policy was procured and issued, there were two outstanding policies on the same property, obtained by Johnson for his own benefit, of $1500 each. Neither of these was in the "Old Mutual, Worcester." After the loss, the defendant company, the two other insurance companies and Johnson agreed that the amount of the loss was $1625, and apportioned the same, so that the defendant was to pay $812.50, and each of the other companies $406.25. This agreement and apportionment was without notice to the plaintiff and without his knowledge. The plaintiff·had no actual notice or knowledge of the other insurance.

The building, at the time of the loss, was fitted up for ten tenements, two of which were actually occupied by Johnson and his family, and he was in legal possession of the whole and had control of the same.

The defendant admitted that the property insured was worth at the time of the insurance at least $4000, and the plaintiff admitted that, including the policy in suit, the property was insured for more than three fourths its value at the time of insurance.

The plaintiff offered evidence tending to show that the loss was $2850, and contended that he was entitled to recover the whole amount of the loss.

If the plaintiff was not entitled to recover, judgment was to be entered for the defendant. If the plaintiff was entitled to recover, and the adjustment was binding on the plaintiff, judgment was to be entered for him for $812.50. If the plaintiff was entitled to recover, and was not concluded by the adjustment, the damages were to be assessed by assessors, under instructions whether the plaintiff should recover the whole amount of the loss, or should recover only such portion as the amount insured by the policy in suit bore to the whole amount insured on the property.

The case was argued in 1876, and reargued in 1877.

*H. C. Hartwell*, (*A. Norcross* with him,) for the defendant.

*F. P. Goulding*, for the plaintiff.

LORD, J. Although the ownership of the equity of redemption had been changed, the policy in suit was substantially a renewal of a former policy upon the same property, for the same

sum, and with the same incumbrance, and payable to the same person.

The defendant contends that it is not liable, for these reasons: first, because, before the fire, the policy declared upon by the plaintiff had become void and of no effect for the reason that the building had been, and, at the time of said fire, was, unoccupied; and, secondly, because Johnson had procured insurance upon the building without the consent of the defendant and in excess of three fourths of the value thereof.

It contends further that, if liable upon the policy at all, it is liable only for the sum of $812.50, for the reason that there was an insurance in other offices to the extent of $3000, and that Johnson and the representatives of those offices made an adjustment of the loss, and that the whole amount of loss was agreed to be $1625, and that its proportion under the policy is but one half of said amount, to wit, $812.50, and that the plaintiff is bound by such adjustment so made by Johnson.

The first of these grounds of defence is not sustained by the facts. The building is described in the policy, as well as in the application, as a "ten tenement frame block." There does not appear to be more than one building; or, if the phrase "block" imports a separation into divisions, it does not of its own force import a separation into more than two divisions. The phrase "tenement block" gives but slight indication of what portions of the block the tenements consist, whether a single room, a floor, or flat, or suite of rooms. It imports only of necessity that the building is designed for the accommodation of various families. The phrase in the policy, "whenever a building insured shall be unoccupied," cannot mean that the absence of an occupant of a single apartment of a tenement house, while other apartments are occupied, shall render the building an unoccupied building. The cases cited by the defendant do not in any manner sustain its position. Neither in *Keith* v. *Quincy Ins. Co.* 10 Allen, 228, nor in *Ashworth* v. *Builders' Ins. Co.* 112 Mass. 422, was there an occupancy, within the meaning of that phrase, of the whole, or of any part, of the building insured; and it would be doing violence to language to say that a tenement block, insured as a single building, is an unoccupied building, with two of the tenements in actual use and occupation as residences; and, while it is

not within the words, it is not within the mischief which the clause is designed to protect the insurer against.

The other ground, upon which the defendant seeks to avoid the policy, is this, that while by the policy the plaintiff was entitled to insure to the extent of three fourths of the value of the property, he had in fact insurance at the time of the loss to more than three fourths of the value of the property at the time of the insurance. This claim is founded upon this provision in the policy: " If, without the consent of the company, expressed in this policy, the assured shall now have, or shall hereafter make, any other contract of insurance against loss by fire on the property, or any part thereof hereby insured, whether such other contract shall be valid or not as against the parties thereto," " this policy shall be void." At the time of the original insurance of the property, and of the issuing of this policy in renewal thereof, the property was valued at $9000. In the first application other insurance was permitted, and in the last application other insurance to the extent of $3000 was disclosed. This, with the $3000 insured by the defendant, made in all an insurance of $6000, which is less than three fourths of the value of the property as stated in the application. But the parties now agree the $6000 thus insured was more than three fourths of the real value of the property at the time of the insurance. How much more it is not agreed. Whether it was inconsiderably more, or whether the difference was very great, nowhere appears. There is no claim of fraudulent misrepresentation of the value of the property, nor is there any claim that the applicants themselves did not honestly and truly believe the valuation of $9000 to be the true valuation. There is of course no presumption of fraud, nor has the court any right, in the absence of evidence, to look upon the conduct of parties as actuated otherwise than by good faith and with honest intentions. The exact question then is, If a person honestly and in good faith applies for insurance upon property, the locality of which and all the circumstances affecting the risk he fully discloses, and discloses also the exact amount of insurance existing, and honestly and in good faith puts a value upon the property, and the existing insurance with what he obtains is less than three fourths of the value as he believes and represents it to be, and the insurer,

with full knowledge of the amount of the existing insurance and with a full knowledge of his valuation, issues a policy in which it consents to other insurance to the amount of three fourths of the value, and it subsequently appears that, in point of fact, the real value at that time was less than the applicant believed it to be, would this avoid the policy thus issued? The mere statement of the proposition suggests its solution. The applicant tells where the property is, he tells what it is, he tells by what it is surrounded, and the purposes for which it is used; all these are facts which he is bound to know, and in reference to which he is bound to tell the truth. Valuation is necessarily a matter of judgment or opinion, and it is matter of common belief that the owner of property is liable to put upon it a higher valuation than others. In the absence of fraud, there can be no injustice in holding the parties to such a contract as this to the valuation which was acted upon, if not by both parties, at least by the applicant with the knowledge of the other party that he was thus acting. And this is especially true in this case in which the extent of the insurance was fully disclosed, and in which the parties are fully protected against any liability other than their proportion of three fourths of the value of the property. We are, therefore, of opinion that, when all the facts and circumstances are honestly and in good faith disclosed, a mere error of opinion, in an honest valuation of property fully described, does not avoid the contract. There is less reason for strictness in this respect where the limit of insurance is three fourths the value, because the insured assumes a portion of the risk himself. And, in analogy to other cases of insurance, where property may be insured to its full amount, the valuation agreed upon, and for which insurance is issued, though it exceeds the real value of the property, if made in good faith and without fraud, is conclusive between the parties.

The defendant, therefore, is liable upon the policy, but, by the terms of it, for only one half the amount of the loss, that being the proportion which its insurance bears to the whole amount insured. The policy having been made payable to the plaintiff in case of loss, his rights were fixed at the time of the loss, and Johnson could no more adjust the amount of the loss than he could release it. The defendant, by the terms of its policy

agreed to account with this plaintiff, and, upon this question of amount of loss, Johnson, in the absence and without the consent of the plaintiff, had no authority to act. The result, therefore, is that judgment must be entered for the plaintiff for one half the amount of the loss, to be determined by assessors, unless the parties agree. *Judgment for the plaintiff.*