Statement.

# Richmond.

## HUMPHREYS V. STRONG.

### January 15, 1925.

1. SEPARATE PROPERTY OF MARRIED WOMEN—*Husband and Wife—Right of Wife to Maintain Action of Ejectment against Husband.*—As under section 5134 of the Code of 1919, a husband is not entitled to the possession or use or the rents and profits of his wife's real estate during the coverture, a wife may maintain an action of ejectment against her husband for a house which he had conveyed to her upon consideration of natural love and affection.

2. HUSBAND AND WIFE—*Separate Property of Married Women—Husband's Rights.*—As to the wife's property rights during the coverture, the husband and wife are as strangers.

3. HUSBAND AND WIFE—*Rescission of Deed by Husband to Wife—Desertion of Wife—Case at Bar.*—In the instant case, a husband asked the rescission of a deed by him to his wife of a house, upon consideration of natural love and affection, on the ground that the wife had abandoned and deserted him without cause, and there was therefore such a failure of consideration as entitled him to a rescission. It appeared that a court of another State in a suit for divorce by the wife had decided that she was justified in leaving her husband, and that there was no willful desertion and abandonment on her part. That decision was final and conclusive on the husband, and the Supreme Court of Appeals in another case had recognized the validity and binding effect of this decree, and had declared that there was nothing to warrant the suggestion that it was procured by fraud.

    *Held:* That the husband was not entitled to rescission.

Appeal from a decree of the Law and Chancery Court of the city of Norfolk. Decree for defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*E. R. F. Wells*, for the appellant.

*Robt. B. Tunstall,* for the appellee.

BURKS, J., delivered the opinion of the court.

In September, 1901, the appellant, Arthur C. Humphreys, purchased valuable residence property in the city of Norfolk, Va., and moved into it and resided therein until his marriage with Jeane Carter in 1905, and thereafter he and his wife continued to reside therein. On February 3, 1909, in pursuance of an ante-nuptial agreement, Humphreys conveyed this property to his wife, in consideration of five dollars and "the natural love and affection which he bears towards his said wife," but in fact no cash consideration was paid.

Owing to differences of temperament, tastes and judgment, the union proved to be an unhappy one, resulting in long and repeated absences of the wife from her home in Norfolk. It is stated in the bill in the instant case that "during the first 113 months of their married life she was actually absent from her home and husband sixty months." As time went on, the proportion of absences became much greater, due, as the wife alleges, to the cruel treatment of her husband. In 1914 she went to Florida on a visit of over a year to her brother, and announced to her husband that she never intended to return. Prior to this time she had several nervous breakdowns, due, as she alleged, to the cruel treatment of her husband, and besides the recuperation obtained by long visits to her old home in Fauquier county, had been under treatment in a sanitorium in Washington, D. C., and in a hospital in Philadelphia. During her absence in 1914 she instituted an action of ejectment against her husband to eject him from the possession of the Norfolk residence,

and the husband obtained an injunction against the prosecution of that action. Pending this litigation, the husband and wife met by appointment in Washington, D. C., in August, 1915, and reconciled their differences, and dismissed their respective suits, "without prejudice," and the wi e, after a visit to friends, returned to Norfolk in October, 1915, and took up her life with her husband again. But she did not long remain there before her nervous system again broke down, due, as she alleges, to the renewed cruel treatment of her husband. Whether this was the cause or not, it is a fact that her nervous condition was seriously impaired and it is admitted in the bill that "in about a month or six weeks she went to Westbrook Sanitarium, near Richmond, Virginia, to be treated for nervousness, and stayed about ten weeks. She returned to Norfolk and stayed at home a month or so, and then went back to Westbrook Sanitarium for about three months. She spent the summer and fall in Fauquier county, Virginia, and returned to her home in Norfolk in December, 1916.

It is thus seen that symptoms of the dissolution of the marriage tie developed rapidly during the year of 1916, until at last the parties reached the stage where mutual confidence and respect ceased to direct or control their relations to each other, and domestic felicity inevitably crumbled, and they were reduced to a sort of perennial banquet of sorrow.

Mrs. Humphreys left the home in Norfolk, December 31, 1916, "taking with her most of her belongings" and with the avowed purpose of never returning—a purpose which she put into execution.

In January, 1918, she removed to Reno, Nevada, and in July, 1918, instituted a suit against her husband for divorce on the ground of extreme cruelty. A copy of

the process and of her complaint were served on her husband in Norfolk, Va., but he entered no appearance, and never submitted himself to the jurisdiction of the Nevada court. In September, 1918, a divorce from the bond of matrimony was granted to her, on the ground of the extreme cruelty of her husband.

On October 17, 1919, Mrs. Humphreys instituted an action of ejectment against her husband to recover possession of the Norfolk home aforesaid, which he still occupied, and rents and damages to the amount of $10,000.00.

On March 29, 1920, Mrs. Humphreys married Richard U. Strong of Washington, D. C.

In September, 1920, Humphreys instituted suit for divorce from his former wife, setting out many of the facts hereinbefore detailed, assailing the validity of the Nevada divorce, and alleging the invalidity of the marriage of his wife to Strong. The trial court decided that case adversely to Humphreys and dismissed his bill with costs to the defendant. On appeal to this court, the decree of the trial court was affirmed. *Humphreys* v. *Humphreys*, 139 Va. 146, 123 S. E. 554.

In March, 1920, this suit was instituted by Humphreys against his wife to obtain a rescission of the deed of February 3, 1909, on the ground of failure of consideration, and to enjoin his wife from the prosecution of her action of ejectment last aforesaid.

From a decree dissolving a preliminary injunction granted to the appellant, and dismissing his bill with costs to the defendant, this appeal was taken. The appeal was allowed before the divorce suit of *Humphreys* v. *Humphreys*, *supra*, was decided by this court.

There are but two grounds upon which the appellant based his right to relief. First, that "under the laws

of this State a married woman cannot maintain an action at law against her husband," and, second, that the appellee willfully abandoned the appellant without just cause, and hence there has been such a failure of consideration as entitled him to a rescission of the deed of February 3, 1909.

[1, 2] Mrs. Humphreys' action of ejectment was not an action at law brought by a wife against her husband. Humphreys was no longer her husband. The bond of matrimony was dissolved by the Nevada decree in September, 1918. But the result would not have been otherwise if there had been no such dissolution. At common law, upon marriage, the husband was entitled as tenant by the marital right to the rents and profits of the wife's land during the coverture, and, as tenant by curtesy, when that right existed, he was entitled to such rents and profits for his life. But these rights have been entirely taken away by section 5134 of the Code, declaring "but neither his right to curtesy, nor his marital rights, shall entitle him to the possession or use, or to the rents, issues and profits of said real estate during the coverture." As to her property rights, during the coverture, they are as strangers. This subject is ably discussed in a most convincing opinion by Judge Chichester, of the Special Court of Appeals, in *Edmonds* v. *Edmonds*, 139 Va. 652, 124 S. E. 415, to which we need only refer.

The appellant charges in his bill:

"Your orator charges that the said Jeane Carter Humphreys has willfully deserted and abandoned him and their joint home without justification or excuse, and has refused to live longer with him, as her husband, and he alleges that these acts on her part violate the condition implied by law in said deed, render it in-

operative and give him the right to call upon a court of equity for a decree rescinding the deed.''

And sums up his contention in the petition for appeal as follows:

"The contention of the plaintiff is that the deed of February 3, 1909, whereby he conveyed his home in the city of Norfolk, Virginia, to his wife, was based upon a consideration of love and affection, and that there was an implied condition that his said wife should continue to live with him and perform the duties of a wife, and, consequently, since she has failed to do this but has willfully abandoned and deserted him, there has been a failure of consideration, and that a court of equity should rescind the deed, or at least restrain her from continuing her action of ejectment, the object of which is to dispossess him of this property which was intended for a home for both of them.''

[3] We need not enter upon any discussion of appellant's contentions. Even if it were conceded that there could be such a failure of consideration as would entitle him to relief under the circumstances of this case, and that the bill was good on demurrer, the concession could only be based on the allegation of the bill that the appellee willfully deserted and abandoned her husband without any justification or excuse. But the Nevada court decided that such was not the fact; that she was justified in leaving him, and that there was no willful desertion and abandonment on her part. That decision was final and conclusive on the appellant. This court recognized the validity and binding effect of the Nevada decree, and, in doing so, amongst other things, said: "The record discloses nothing to warrant a suggestion that Mrs. Humphreys procured her Nevada divorce by fraud. As appears from the record, her husband's conduct towards her had been such that to

live with him longer meant permanent impairment of her health, if not the loss of her mind." *Humphreys* v. *Humphreys*, 139 Va. 146, 123 S. E. 554.

This necessarily ends the present litigation, and leaves nothing else to be decided. According to appellant's own theory of the case, if there was no desertion, he is not entitled to a rescission, and there was no desertion. It is not a judicial function to talk about what the law would be under different and non-existing facts. It is enough to decide the case made by the pleadings and proof. This we have done, and it only remains to be said that we find no error in the decree of the trial court, and it is accordingly affirmed.

*Affirmed.*