## Royal Insurance Co. v. Ward et al.

(Decided Feb. 9, 1934.)

688

HOLIFIELD, GARDNER & McDONALD and D. H. HUGHES for appellant.

WEBB & WEBB for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming in part and reversing in part.

On January 25, 1932, the appellee W. F. Ward insured his residence in Mayfield, Ky., with the appellant which issued him a policy in the principal amount of $3,800, with a rider attached styled "Standard Mortgage Clause" in favor of the appellee Young Men's Building & Loan Association, which at that time held a mortgage on this house and the lot upon which it was located. Among other things, this "standard mortgage clause rider" provided:

> "Loss or damage, if any, under this policy shall be payable to Young Men's Building and Loan Association, mortgagee, as interest may appear, and this insurance as to the interest of the mortgagee only therein shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property * * * provided that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee shall on demand pay the same. * * * The company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee for 10 days after notice to the mortgagee of such cancellation and then cease."

This rider also provided for the right of subrogation under certain conditions in the event the insurer paid the mortgagee a loss under the policy. In June, 1932, the residence was burned. Physically a large proportion of it survived the fire. Thereafter Mr. Ward and the appellant through its adjuster took up the question of adjusting the loss. The appellant procuring the bids of reputable lumber dealers and contractors in Mayfield to repair the loss took the position that such repair would not exceed $1,700, whereas Mr. Ward, relying on an estimate given him by E. L. Riley of Memphis,

Tenn., insisted that the loss could not be repaired for as much as $2,500. On this difference in the estimates, Ward and the appellant split. Thereupon, relying on a clause in the policy which provided that in the event of disagreement as to the amount of loss the same should be ascertained ''by two competent and disinterested appraisers, the insured and this company each selecting one and the two so chosen'' selecting an umpire, the appellant gave notice to Ward of its election to arbitrate and appraise the loss. This it had a right to do. Continental Insurance Co. v. Vallandingham & Gentry, 116 Ky. 287, 76 S. W. 22, 25 Ky. Law Rep. 468, 105 Am. St. Rep. 218. Ward, taking the position that because his building had been so damaged by the water used in extinguishing the fire as well as by the fire itself that it could not be put back in the condition in which it was prior to the fire, asserted that his loss was total and hence there was nothing to appraise under the valued policy statute. Ky. Stats. sec. 762a-22. He declined to enter into an arbitration or appraisement. The appellant claims that about the time it notified Ward of its election to arbitrate and appraise it also verbally so notified the mortgagee. This the mortgagee denies. The appellant declining to settle the loss, this suit was brought by Ward and the mortgagee to recover the full amount of the policy on the theory that the loss was total. The appellant defended on the ground that the loss was not total but only partial, and that it had called for an arbitration and appraisal as it had a right to do if the loss were partial, and Ward had declined to enter into such arbitration and appraisal. Subsequent pleadings presented the issue as to whether or not the mortgagee had under the policy also to be notified of the appellant's election to arbitrate and appraise; it being the appellant's position that the mortgagee was entitled to no such notice and Ward's and the mortgagee's position that it was. The appellant averred though that, if the mortgagee was entitled to notice, it had had such notice. This in turn was denied by the mortgagee. On these issues the parties went to trial. Evidence bearing on the proposition as to the extent of damage done the building and whether or not the mortgagee had had any notice of appellant's election to arbitrate and appraise was produced by the parties. The case was then submitted to the jury, first, on a peremptory instruction to find for the appellees in the full

amount of the policy if the jury thought the loss were total, but, if not, then to find for the appellees in the event the jury was of the opinion that the mortgagee did not have notice of appellant's election to arbitrate and appraise and in such event to find for the appellees the difference in value of the building just before and just after the fire. Under these instructions, the jury found a verdict in favor of the appellees for $3,500, thus finding that the mortgagee had no notice of appellant's election to arbitrate and appraise, and from the judgment entered on that verdict this appeal is prosecuted.

The appellant first directs its attack on the judgment at the proposition assumed by the court below and supported by the appellees that the mortgagee under this policy was entitled to notice of the appellant's election to arbitrate and appraise, and that, if the mortgagee did not receive such notice, the appellant had no right to such arbitration and appraisal as against any one. The appellant, relying on a line of decisions based on what may be denominated "the open mortgage clause" as distinguished from "the standard mortgage clause," insists that the mortgagee under a loss payable provision is but the nominee or agent of the insured to receive such portion of the insurance money as may be represented by the unpaid mortgage debt, and that such mortgagee stands or falls with the insured in the construction and application of the provisions of the policy as to the insured. Without examining or testing the soundness of the appellant's position in this regard, we pass at once to a consideration of the distinction between "the standard mortgage clause" and "the open mortgage clause." This distinction is thus expressed in the case of Hartford Fire Ins. Co. v. Bryan, 244 Ky. 61, 50 S. W. (2d) 74, 75:

> "The loss-payable clause to a mortgagee may or may not constitute an independent contract with him. Many policies contain what is called a 'standard clause' or 'union clause,' which in effect stipulates that the mortgagee's interest shall not be invalidated or affected by an act or breach of condition by the mortgagor or owner. Others, like the one now before us, do not contain such a provision, but do contain what is called an 'open-mortgage clause,' and under the indorsement of a loss-payable provision the mortgagee is regarded simply as the appointee of the insured owner, and the effect

is merely to direct payment of the proceeds according to his interests. So that all express stipulations and all the conditions of the policy are applicable to the mortgagee. No different or additional legal burden is placed on the insurer by virtue of the loss-payable clause. The mortgagee's indemnity is at the risk of every act and omission of the mortgagor; his right is no greater, and the owner's breach of a condition of the policy which prevents a recovery by him also precludes a recovery by the mortgagee. 14 R. C. L. 1037; 5 Couch, Cyc. of Ins. Law, sec. 1215a; Hill v. International Indemnity Co., 116 Kan. 109, 225 P. 1056, 38 A. L. R. 363; Hole v. National Fire Insurance Co., 122 Kan. 328, 252 P. 263, 50 A. L. R. 1113. Although the benefit, in whole or in part, inures to the mortgagee, the property remains that of the mortgagor as owner, and there is no insurance of the mortgagee's equitable interest therein. McKinney v. Western Assurance Co., 97 Ky. 474, 30 S. W. 1004, 17 Ky. Law Rep. 325.''

Under the standard mortgage clause, however, the mortgagee is much more than the appointee or agent of the insured. Such a clause specifically provides that the insurance protecting the interest of the mortgagee is not invalidated by any act or negligence of the mortgagor; that, in the event the mortgagor fails to pay the premium, the obligation is upon the mortgagee to pay the premium; that, in the event the policy is canceled as to the owner or mortgagor, it yet remains in full force and effect as to the mortgagee until he too is given notice of the cancellation; and, further, the insured on paying the mortgagee is subrogated to the rights of the latter where the mortgagee because of his rights under the policy must be paid although the owner no longer has any rights under the policy as, for example, where the policy has been canceled as to the owner but yet remains in full force and effect as to the mortgagee. This analysis of the standard mortgage clause leads to but one conclusion, and that is the mortgagee is a party to the policy and is to the extent of his interest and to the extent of the insuring provisions as much the insured as is the owner. And, under the express terms of that standard mortgage clause, he is not affected by the acts or neglects of the mortgagor though the policy may be invalidated as to the latter by the latter's acts. Thus

in Niagara Fire Ins. Co. of New York .v. Hankins, 220 Ky. 234, 294 S. W. 1070, where there was a standard mortgage clause, the policy was voided as to the owner because of his placing a second mortgage on the insured property without the insurer's consent, but was held valid and enforceable by the mortgagee. Thus we see that, under the standard mortgage clause, the mortgagee does not stand or fall with the mortgagor as perhaps he may do under the open mortgage clause. A mortgagee under a standard mortgage clause has certain definite rights independent of the rights and obligations of the mortgagor, and it now remains to be determined whether such a mortgagee must submit to an appraisal made by the insured and the insurer without notice to or participation in by the mortgagee, for that is the type of case here presented. In discussing this question, the Supreme Court of Connecticut in the case of Collinsville Savings Soc. v. Boston Ins. Co., 77 Conn. 676, 60 A. 647, 649, 69 L. R. A. 924, said:

> "It is quite clear that the plain and explicit provision of the 'union mortgage clause,' to the effect that the mortgagee's right of recovery under the policy, as the payee thereof, shall not be affected by the act or neglect of any person other than the mortgagee, his agent, or those claiming under him, must suffice to establish for a mortgagee under such conditions a status with respect to the insurance which is not only independent of, but also superior to, that of the property owner. The former's rights are thus expressly set free from the operation of those acts and neglects of the latter which would destroy the latter's insurance or limit the extent of his recovery. The rights of the mortgagee become not merely those of a substitute for the owner. He acquires rights of his own which are subject to no man's control, and which give him independent and distinct protection.

> "It requires no argument to demonstrate that under such circumstances the mortgagee's protection extends, as we have above assumed it to do, to the consequences of all the acts and neglects of the property owner both before and after loss, and that it therefore precludes a submission to appraisers which should be binding upon the mortgagee without his concurrence or ratification."

It is true that the Connecticut case was dealing with an open mortgage clause, but in doing so it was distinguishing an earlier Connecticut case where the parties by their acts had brought about a situation similar to that produced by a standard mortgage clause. Hence its reasoning is not only persuasive, but also smacks of precedent. This Connecticut case analyzes the cases of Hall v. Fire Association, 64 N. H. 405, 13 A. 648, and Harrington v. Fitchburg Mut. F. Ins. Co., 124 Mass. 126, which held that a mortgagee was not bound by an arbitration and appraisal had between the mortgagor and the insurer, and points out that, although the reports are too meager to indicate the character of mortgage clause involved, yet under legislation then in force in these states the mortgage clause which was involved was what we here call the standard mortgage clause. This Connecticut case sharply criticizes the case of Bergman v. Commercial Assurance Co., 92 Ky. 494, 18 S. W. 122, 13 Ky. Law Rep. 720, 15 L. R. A. 270. That case presented the question whether a mortgagee was precluded by an arbitration and appraisal had between the insurance company and the insured where there was a rider on the policy that the loss on the policy should be payable to the mortgagee. It will be noticed that this was the open form of mortgage clause. While it is true that the court laid stress on the proposition that the policy in that case had been assigned to the mortgagee and that the policies provided that the arbitration and appraisal should be had by "the parties" which term the court construed to mean the real parties in interest and hence the assignee, yet the reasoning of the court sustains the proposition that, where the mortgagee has an interest under the policy, he is not precluded by an arbitration and appraisal had between the insurer and the insured without notice to or consent of such mortgagee. If this be true where the open form of mortgage clause is involved, a fortiori it is true where the standard form of mortgage clause is present. Even if as argued by appellants and as suggested by the Supreme Court of Connecticut this Bergman Case be unsound where the open form of mortgage clause is involved, the reasoning of the court to the effect that a mortgagee having a definite interest under a policy cannot have that interest bartered away by the act of the insurer and insured without his consent is sound, especially where, as here, the mortgage clause provides that

the interests of the mortgagee cannot be affected by the act or neglect of the mortgagor. See, also, Ætna Ins. Co. v. Pelham, 115 Miss. 229, 76 So. 153, and 26 C. J. 425. We are therefore of the opinion that the appellee Young Men's Building & Loan Association was, so far as its interests were concerned, unaffected by the election on the part of the appellant to arbitrate and appraise, at least where, as here, such mortgagee was not called upon to arbitrate and appraise the extent of the loss so far as applicable to its mortgage claim. Hence the appellant could not as to the Young Men's Building & Loan Association defend on the ground of the lack of an arbitration and appraisal. However, as we have seen in the Hankins Case, supra, defenses unavailable as against the mortgagee under a standard mortgage clause, such as we have here, may be available as against the owner or mortgagor. The right to call for an arbitration and appraisal as between the appellant and Ward, the owner, was unaffected by the lack of such rights on the part of the appellant as against the mortgagee. As above stated, the clause calling for an arbitration and election is a valid one, and, though the insurance company might not have the right to invoke it as against the mortgagee without notice or even with notice, yet it did have the right to invoke it so far as the interest of the mortgagor was involved. It follows that so far as Ward was concerned the court erred in instructing the jury that, if the loss was partial, Ward could recover if the mortgagee received no notice of appellant's election to arbitrate and appraise. Ward conceded his reception of the notice of the election of the appellant to arbitrate and appraise, and hence as to him the court should have instructed the jury that, if they found the loss to be partial, they should find for the defendant and then on such verdict have dismissed Ward's suit without prejudice.

As our conclusions lead to an affirmance of the judgment so far as the Young Men's Building & Loan Association is concerned, unless the other points urged by the appellant be of merit, we are thus brought to a discussion of the other contentions urged by appellant for reversal of this judgment. It argues, first, that the verdict is flagrantly against the evidence, in that there is no evidence to indicate that, if the loss were partial, it would cost more than $2,500 to repair this building. In this appellant is in error. Although the evidence

does indicate that a degree of repair may be had at a cost running from $1,600 up, yet a number of the witnesses say that the building cannot be restored to the condition in which it was prior to the burning without really tearing it down and rebuilding it from the ground up, and that, if just repaired, it will be a building worth much less than it was prior to the fire, and that to put it in the condition it was just prior to the fire would cost, as some of the witnesses say, as high as $4,400. So there was evidence to sustain the finding of the jury as to the amount of the damage done. Inasmuch as the interest of the building and loan association is only between $3,000 and $3,100, it is obvious that there was ample evidence to sustain that amount of the verdict.

It is next contended that the attorney for the plaintiff was guilty of improper conduct in his opening statement. While perhaps such attorney may have transcended the provisions of the Code by making an argumentative statement of his case instead of a short concise outline of what he intended to prove, we do not regard the statements in this case of the attorney as prejudicial.

It is next contended that the court erred in excluding testimony as to the original cost of this building. It is true that, where value of property is in issue, we have held that, where it appears that the buyer and seller were at liberty to contract on equal terms, their agreement in price constitutes some evidence of value providing the time of purchase is not too remote, but such test is not conclusive. Cherry Bros. v. Christian County, 146 Ky. 330, 142 S. W. 726. But in this case the evidence offered was not as to the sale price of the property arrived at by open bargaining between seller and buyer, but as to what it cost the contractor to erect the building. He may have been an extravagant contractor or the building may have been erected at a great bargain. In the latter event, the owner would be entitled to the benefit of his bargain; in the former, he would have to pay the penalty of his contractor's imprudence. It would take the trial too far afield to inquire into the reasonableness of the construction costs, and so such evidence plainly was not admissible.

The judgment as to the Young Men's Building & Loan Association and to the extent of its interest is af-

firmed, but as to Ward it is reversed, with instructions to grant the appellant a new trial in conformity with this opinion.