936 F.2d 572
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
FIRST STATE INSURANCE COMPANY, Plaintiff-Appellee,
v.
HENRY COUNTY TOBACCO WAREHOUSE COMPANY, INC., et al., Defendants,
Janice H. Ashworth, Defendant-Appellant.
 No. 90-5659.
 United States Court of Appeals, Sixth Circuit.
 July 1, 1991.
 
 Before DAVID A. NELSON and SUHRHEINRICH, Circuit Judges, and RUBIN, District Judge.*
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 Janice H. Ashworth, the appellant in this case, claimed a mortgage interest in a tobacco warehouse formerly owned by the Henry County Tobacco Warehouse Company, Inc. The warehouse company was the named insured under a policy of fire insurance issued by First State Insurance Company, the appellee. The policy listed Mrs. Ashworth as one of several mortgagees.
 
 
 2
 The building was destroyed by a fire intentionally set by Ashworth family members who had ownership interests in the property. Invoking the diversity jurisdiction of the United States District Court for the Eastern District of Kentucky, the insurance company brought a declaratory judgment action against Mrs. Ashworth and other potential claimants under the policy.[1] The complaint had a purported copy of the policy attached to it, but two pages--one of them critically important--were missing.
 
 
 3
 After discovery had been conducted, Mrs. Ashworth moved for summary judgment. Her motion was accompanied by a complete copy of the policy. The insurance company filed a cross-motion for summary judgment, the sole basis for which was the supposed absence from the policy of a "standard mortgage clause" providing that coverage of mortgagees' interests would not be invalidated by any act or neglect of the mortgagor or owner.
 
 
 4
 The district court did not decide the mortgage clause issue, but ultimately granted summary judgment for the insurance company on the ground that Mrs. Ashworth (who was not alleged to have committed fraud herself) had failed to sustain her burden of showing that she had a valid mortgage interest. Concluding that the district court erred in this conclusion, and noting (as counsel for both sides failed to do) that one of the missing pages of the insurance policy did in fact contain a standard mortgage clause, we shall reverse the judgment and remand the case for entry of judgment in favor of Mrs. Ashworth.
 
 
 5
 * Janice Ashworth's husband, John Wade Ashworth, acquired a part-interest in a Carrollton, Kentucky, warehouse complex in 1981. In 1982 the property was conveyed to a corporation the name of which was subsequently changed to Henry County Tobacco Warehouse Company. John Wade Ashworth was the president of the company.
 
 
 6
 In January of 1983 a fire of suspicious origin destroyed one of the two warehouse buildings in the complex. We are told that the insurance carriers (which did not at that time include First State) were unable to establish that Mr. Ashworth or his associates were guilty of arson, and the loss was paid.
 
 
 7
 In October of 1983 the warehouse company executed a deed conveying a two-thirds interest in the premises to John Wade Ashworth and a one-third interest to a man named Herring. On the following day Mr. Herring signed a deed conveying his one-third interest to Scott Ashworth, one of John Wade Ashworth's brothers. On the same date John Wade Ashworth and his wife Janice executed a deed conveying Mr. Ashworth's two-thirds interest to another brother, J.D. Ashworth. The deed from John Wade and Janice Ashworth recited that the grantee, J.D. Ashworth, had signed a $183,000 promissory note payable to the order of Janice H. Ashworth. "To secure the prompt payment of the above mentioned note and interest thereon," the deed provided, "a vendor's lien is hereby retained...."[2] It is the reservation of this mortgage interest in favor of Janice Ashworth on which her claim against the insurance company depends.
 
 
 8
 In a deposition filed with the district court in 1986, Mrs. Ashworth gave detailed testimony on the background of the 1983 transactions. Mrs. Ashworth explained that she and John Wade Ashworth were married from 1960 to 1985, when Mr. Ashworth died of cancer. During their marriage the couple bought and sold several pieces of farming property in North Carolina, where Mr. Ashworth raised tobacco. Janice Ashworth signed the mortgage notes with her husband, and she considered herself a half owner of the North Carolina holdings. In 1979, she testified, she and her husband sold a stand of timber to Boise Cascade Corporation for $80,000. A copy of the deed was produced, as was a copy of a 1980 deed in which the couple conveyed a 158 acre farm for an indicated price of $262,000. The mortgage on the latter property was relatively small at the time of sale, Mrs. Ashworth testified. Her husband used some of her money from these sales, Mrs. Ashworth said, to help pay for his purchase of an interest in the Carrollton warehouse property in 1981.
 
 
 9
 Mr. Ashworth discovered in 1982 or 1983 that he had cancer, according to the deposition testimony, and he decided to sell his interest in the warehouse complex because his health no longer permitted him to run the business. The amount of Janice Ashworth's money that had been invested in the warehouse was $183,000, the testimony indicates, and Mrs. Ashworth told her husband that "[i]f you're going to sell the warehouse, I want my money out of it."
 
 
 10
 Mr. Ashworth agreed. The sale was structured, Janice Ashworth testified, so that she would get her money through a $183,000 note from J.D. Ashworth, to whom her husband planned to sell his interest. The text of the note, as set out in the deed that reserved the vendor's lien as security,[3] provided that the first payment, in the amount of $30,500 plus interest, was to be made on January 2, 1984. Mrs. Ashworth testified that J.D. Ashworth did in fact make a payment in January of 1984, but then, with his brother Scott, borrowed the money back from her. Annual payments due in 1985 and 1986 were never made, she testified.
 
 
 11
 We turn now to the insurance policy that is at issue in this litigation. The policy became effective as of November 2, 1983. Although the corporation of which John Wade Ashworth was president may have divested itself of title by that time, the policy listed the insured as Henry County Tobacco Warehouse, Inc. The face sheet of the policy (prepared on a "memorandum of insurance" form) referred to a "schedule of mortgagees" to whom any loss would be payable "[s]ubject to the provisions of the mortgage clause attached to [the] policy...."
 
 
 12
 The forms attached to the policy included a four-page "General Property Form," No. CF 00 11. Page 4 of that form, as can be seen from the complete copy filed with Mrs. Ashworth's summary judgment motion,[4] contained a provision captioned "Mortgage Clause." This mortgage clause read, in part, as follows:
 
 
 13
 "Loss or damage, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear, under all present or future mortgages upon the property ... and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property...." (Emphasis supplied.)
 
 
 14
 The schedule of mortgagees incorporated in the policy listed Janice H. Ashworth, among others, and concluded with the words "[a]s their interests may appear."
 
 
 15
 On February 12, 1984, while the insurance policy was in force, a second fire destroyed the remaining warehouse building. Investigation of the fire led to the indictment of J.D. and Scott Ashworth in June of 1986. Although John Wade Ashworth had died a year earlier, the indictment named him as a co-conspirator.
 
 
 16
 The case against J.D. and Scott Ashworth went to trial in federal court and resulted in the brothers' conviction on charges that included conspiracy, use of fire to destroy property used in interstate commerce, and use of the mails for insurance fraud. The convictions were upheld on appeal. United States v. Ashworth, 836 F.2d 260 (6th Cir.1988).
 
 
 17
 The instant declaratory judgment action was filed in August of 1984 against the warehouse company, the three Ashworth brothers, and Janice H. Ashworth. The defendants filed an answer and counterclaim in which Mrs. Ashworth alleged that she had a $183,000 mortgage interest in the property and was entitled to be paid that amount, plus interest, by the insurance company.
 
 
 18
 Mrs. Ashworth moved for summary judgment against the insurance company in February of 1989. Her motion was accompanied by, among other things, copies of the deed reserving the vendor's lien in her favor; the insurance policy; and answers to interrogatories in which the insurance company, while stating that "there is serious doubt as to whether Janice Ashworth has given any sort of consideration for the interest she claims" and contending that Mrs. Ashworth was "operating as the alter ego of John Wade Ashworth," acknowledged that she "may have been doing so in ignorance of any fraud or misrepresentation on the part of anyone."[5]
 
 
 19
 The insurance company responded with a cross-motion supported by a brief in which it argued that because there was "no language in the subject insurance policy which places Mrs. Ashworth in any better position than the named insured"--because, in other words, "[t]he subject policy does not contain a standard mortgage clause"--Mrs. Ashworth's status was "no better than [that of] the named insured, Henry County Tobacco Warehouse, or its owners or operators who committed the acts of arson." (Emphasis in original.) Consequently, the insurance company maintained, it was entitled to judgment as a matter of law. (The insurance company's contentions were factually incorrect, of course; the policy did contain a standard mortgage clause, and it provided that Mrs. Ashworth's status as an insured would not be invalidated by the owners' act of arson.)
 
 
 20
 Mrs. Ashworth's counsel never invited the district court's attention to the standard mortgage clause on page 4 of Form CF 00 11, and the district court chose not to decide whether other policy provisions cited by counsel compelled the same result that a true mortgage clause would have done. Instead, on June 29, 1989, the district court entered an order stating that the insurance company had met its "prima facie burden to show possible fraud in the transactions under which the defendant Janice Ashworth claims a mortgage interest;" the order gave Mrs. Ashworth 90 days in which to file certified copies of instruments of transfer sufficient "to show consideration in the transaction and good title in the transferor."
 
 
 21
 Within the prescribed 90 days, Mrs. Ashworth filed certified copies of the 1981 deed through which her husband had acquired an interest in the property; the 1982 deed by which title was transferred to the warehouse company; the 1983 deed by which the warehouse company conveyed a two-thirds interest to the husband; and the deed of the following day in which husband and wife conveyed a two-thirds interest to J.D. Ashworth, subject to the reservation of a $183,000 mortgage in favor of Mrs. Ashworth. Also included in the filing was a copy of the deed through which Scott Ashworth received the remaining one-third interest.
 
 
 22
 In a very succinct order filed on January 18, 1990, the court denied Janice Ashworth's motion for summary judgment and granted summary judgment to the plaintiff insurance company. The court explained its ruling as follows:
 
 
 23
 "The plaintiff's motion is granted because Janice Ashworth has failed to come forward with evidence to meet her burden of proof. That is Janice Ashworth has failed to show that the transaction through which she was conveyed the subject mortgage interest was not a fraudulent conveyance. Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir.1989). Pursuant to this court's order of June 29, 1989, the burden was on Janice Ashworth because the conveyance had badges of fraud by virtue of the underlying circumstance[s]...."
 
 
 24
 A final judgment disposing of other matters was entered three months later; this appeal followed.
 
 II
 
 25
 The filing made by Mrs. Ashworth in response to the district court's order of June 29, 1989, clearly complied with the terms of the order insofar as the source of John Wade Ashworth's title was concerned. As a matter of law, we believe, the filing and the other papers before the court also demonstrated the existence of consideration for Mrs. Ashworth's mortgage interest.
 
 
 26
 Even if Mrs. Ashworth had not testified--as she did, apparently without contradiction--that her $183,000 mortgage represented a return of her own money, the natural love and affection between husband and wife would have constituted good and sufficient consideration for her husband's conveyance of the mortgage interest to her. See Humphreys v. Strong, 141 Va. 146, 126 S.E. 194 (Va.1925). Mrs. Ashworth had a statutory right of dower in the warehouse property, moreover, see Ky.Rev.Stat. Sec. 392.020, and she gave up her dower right when she signed the deed; this, too, constituted consideration for the mortgage interest. And even if Mrs. Ashworth had never possessed a dower interest in the property, her husband's conveyance of the warehouse to J.D. Ashworth in consideration of a mortgage in favor of Janice Ashworth would have made the latter a third-party beneficiary to the contract between John Wade Ashworth and J.D. Ashworth. See United States v. Wood, 877 F.2d 453, 457 (6th Cir.1989), citing Simpson v. JOC Coal, Inc., 677 S.W.2d 305, 309 (Ky.1984). In Kentucky, finally, the mere recitation in a deed that consideration has been given constitutes prima facie evidence of that fact. Head v. Head, 293 Ky. 371, 169 S.W.2d 25, 26 (1943). The deed in question here recited that the transfer to J.D. Ashworth was made for "a valuable consideration" separate and apart from J.D. Ashworth's promise to pay Janice Ashworth $183,000. The record as a whole leaves no room for supposing that the grant of the mortgage interest to Mrs. Ashworth was without consideration.
 
 
 27
 The insurance company contends, however, that in 1983, the year when the warehouse was transferred to John Wade Ashworth's brothers and the insurance company was induced to issue its fire insurance policy on the property, the Ashworths wrongfully concealed their intent to burn down the warehouse for the insurance. But assuming that the Ashworths had formulated such an intent in 1983--and we note that the indictment charged that the conspiracy to burn the warehouse began "on or about the last week of January, 1984"--the insurance company has never been able to point to any evidence that Janice Ashworth was privy to the fraud.
 
 
 28
 The district court may well have believed, based on what it read in the briefs, that the insurance policy simply named Mrs. Ashworth as one to whom a loss would be payable, as her interest might appear, if the owners of the property were guilty of no act that would defeat the insurance coverage. As we have seen, however, this was not a mere "loss payable" policy; contrary to the understanding of the lawyers, the policy included a standard mortgage clause that gave mortgagees contractual rights capable of rising above the rights of the owners. See Royal Insurance Co. v. Ward, 252 Ky. 687, 68 S.W.2d 9, 10 (1934) (standard mortgage clause " 'in effect stipulates that the mortgagee's interest shall not be invalidated or affected by an act or breach of condition by the mortgagor or owner' ") (quoting Hartford Fire Ins. Co. v. Bryan, 244 Ky. 61, 50 S.W.2d 74, 75 (1932)). See also Grange Mutual Casualty Co. v. Central Trust Co., N.A., 774 S.W.2d 838, 839 (Ky.Ct.App.1989) (standard mortgage clause constitutes a separate contract of insurance between the mortgagee and the insurer).
 
 
 29
 On their face, the papers before the district court demonstrated that Mrs. Ashworth had a valid mortgage interest for which the plaintiff insurance company had agreed to provide her with direct coverage not dependent on the coverage of the owners. Once Mrs. Ashworth filed her properly supported motion for summary judgment, the insurance company had the burden of pointing to some evidence showing that Mrs. Ashworth's coverage was vitiated by fraud in which she herself was a participant or of which she had knowledge. Rule 56(c), Fed.R.Civ.P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). The insurance company having failed to discharge that burden, Mrs. Ashworth was entitled to judgment on the liability issue.
 
 
 30
 The dollar amount of the judgment to which Mrs. Ashworth may be entitled remains to be determined. Her mortgage interest was junior to the mortgage interests of other mortgagees. Mrs. Ashworth tells us that the other mortgagees have been paid, but we do not know how much they were paid, or what the total dollar amount of the loss was, or how much of the coverage has been consumed by payments to other mortgagees. It will probably be a simple matter to fill in these facts on remand.
 
 
 31
 For the reasons stated, the judgment of the district court is REVERSED, and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable Carl Rubin, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The contents of the warehouse were insured by another carrier, which joined in the action as a second plaintiff. Only First State and Mrs. Ashworth are involved in this appeal, and for the sake of simplicity we ignore the other parties
 
 
 [2]
 All of the instruments described in this paragraph were recorded in the office of the Clerk of the Carroll County Court; we do not know the exact date or dates of recordation
 A "vendor's lien," the parties agree, is a mortgage.
 
 
 [3]
 Mrs. Ashworth testified that she had the note, but apparently she has never been able to produce it. Loss of the note might conceivably impair her ability to get a deficiency judgment against J.D. Ashworth, but we do not see how it could affect her ability to proceed against the land itself. The instrument through which title passed to J.D. Ashworth unquestionably carved out a mortgage interest in favor of Janice Ashworth, and J.D. could not be heard to repudiate his own patent
 
 
 [4]
 We surmise that the omission of page 4 from the copy filed by the insurance company resulted from the fact that the original form was printed on both sides of each sheet; the person who prepared the copy attached to the complaint evidently failed to duplicate pages 2 and 4. When briefs were prepared several years later, counsel for both sides must have worked from the incomplete copy. There is no reason to believe that anyone consciously tried to mislead the district court or this court
 
 
 [5]
 In its brief on appeal, the insurance company tells us that it "has never alleged that Janice Ashworth committed fraud."